**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 11, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE LUIS RODRIGUEZ-RIVERA,

Defendant - Appellant,

No. 06-3386

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D. Ct. No. 04-CR-20091-CM)**

---

Robert G. Levitt, Denver, Colorado, appearing for Appellant.

James A. Brown, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Kansas, Topeka, Kansas, appearing for Appellee.

---

Before **TACHA**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Pursuant to a plea agreement, Defendant-Appellant Jose Luis Rodriguez-Rivera pleaded guilty to possession with intent to distribute five kilograms or more of a mixture containing cocaine in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(A)(ii). Mr. Rodriguez-Rivera appeals the 235-month sentence imposed by the District Court, and the Government has moved this Court to enforce a provision in the plea agreement waiving his right to appeal. We exercise jurisdiction under 28 U.S.C. § 1291, GRANT the motion to enforce, and DISMISS Mr. Rodriguez-Rivera's appeal.

## I. BACKGROUND

On June 23, 2004, Mr. Rodriguez-Rivera was indicted for conspiracy to distribute 500 grams or more of a mixture containing cocaine, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii), and possession with intent to distribute five kilograms or more of a mixture containing cocaine, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii). Mr. Rodriguez-Rivera and the Government entered into a plea agreement whereby Mr. Rodriguez-Rivera agreed to plead guilty to the possession charge and the Government agreed to dismiss the conspiracy charge.

The factual basis for the guilty plea, as set forth in the plea agreement, describes the amount of cocaine discovered in Mr. Rodriguez-Rivera's possession: 4.739 kilograms were located in his car, and another 998 grams were located in his house. The agreement specifically provides for the application of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") and states that "the defendant understand[s] that the conduct charged in any dismissed counts of the indictment is to be considered as well as all other uncharged related criminal activities as relevant conduct for purposes of calculating the offense

level."  In addition, the Government agreed to move for a three-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, contingent on Mr. Rodriguez-Rivera's continuing manifestation of acceptance of responsibility. Notably, the agreement provides that, if Mr. Rodriguez-Rivera falsely contests relevant conduct or attempts to obstruct justice, the Government may withdraw its recommendation for the reduction without breaching the plea agreement. Pursuant to the agreement, the Government also agreed to provide all information relevant to sentencing to the United States Probation Office and the District Court and to request a sentence at the low end of the Guidelines range as calculated by the District Court.  And as part of the agreement, Mr. Rodriguez-Rivera waived direct and collateral review of any sentence within the applicable range determined by the court.

The United States Probation Office then prepared a presentence report ("PSR").  Based on the total amount of cocaine discovered in his car and his home, the PSR attributed 5.728 kilograms of cocaine to Mr. Rodriguez-Rivera.[1] This resulted in a base offense level of 32.  *See* U.S.S.G. § 2D1.1.  The PSR then recommended a two-level enhancement based on the probation office's finding that Mr. Rodriguez-Rivera was a leader or supervisor in the crime.  *See* U.S.S.G. § 3B1.1(c).  After subtracting three levels for acceptance of responsibility, *see*

---

[1]It appears that this is a miscalculation; 4.739 kilograms plus 998 grams yields 5.737 kilograms.  The error, however, does not affect this appeal.

U.S.S.G. § 3E1.1, the PSR recommended a total offense level of 31. With a

criminal history category of I, the resulting Guidelines range was 108 to 135

months' imprisonment.[2]

Mr. Rodriguez-Rivera objected to the PSR, arguing that he was not a leader

or supervisor under § 3B1.1(c). In a separate filing, he sought both "safety-

valve" relief under U.S.S.G. § 5C1.2,[3] which requires that the defendant was not a

"supervisor of others in the offense," as well as a "minor-role" reduction under

U.S.S.G. § 3B1.2(b).[4] This filing included an affidavit from Mr. Rodriguez-

Rivera in which he attested that, contrary to the testimony of his co-defendant and

the evidence in the case, he (Mr. Rodriguez-Rivera) had only been involved in

drug trafficking for a very short time and with only small amounts of cocaine.

The Government disagreed with the PSR's finding of drug quantity,

asserting that a total of 65.728 kilograms of cocaine—with a corresponding base

offense level of 36—was attributable to Mr. Rodriguez-Rivera as relevant

conduct. The Government based its calculation on statements from Mr.

---

[2]This PSR is not in the record on appeal, but it is clear from the parties' objections and descriptions of the PSR that this summary is accurate.

[3]U.S.S.G. § 5C1.2 allows a sentencing court to impose a sentence without regard to any statutory minimum sentence if the court finds that the defendant meets five criteria set forth in that section.

[4]U.S.S.G. § 3B1.2(b) allows a sentencing court to reduce a defendant's offense level by two levels if the court finds that the defendant played a minor role in the offense.

Rodriguez-Rivera's wife, who told investigators that Mr. Rodriguez-Rivera had received shipments of drugs on a weekly or bi-weekly basis, as well as the discovery of several coolers and packing materials in Mr. Rodriguez-Rivera's home. Because the Government's evidence contradicted the statements in Mr. Rodriguez-Rivera's affidavit, the Government argued that the PSR properly recommended an enhancement for a supervisory or leadership role and that Mr. Rodriguez-Rivera's requests for safety-valve relief and a minor-role reduction were unfounded. The Government also asserted that, because Mr. Rodriguez-Rivera had given false information in this affidavit, he was not entitled to a reduction for acceptance of responsibility and should be given a two-level increase if the court found he had obstructed justice. *See* U.S.S.G. § 3C1.1.

The PSR was amended. The revised version largely reflected the Government's position, although it did not recommend an obstruction-of-justice enhancement. With a base offense level of 36 under § 2D1.1, a two-level supervisory-role enhancement under § 3B1.1(c), and no credit for acceptance of responsibility, the total offense level was 38. The recommended range was 235 to 293 months, and after the sentencing hearing, the court sentenced Mr. Rodriguez-Rivera to 235 months.

Mr. Rodriguez-Rivera appeals, arguing that the Government breached the plea agreement and engaged in prosecutorial misconduct by making the sentencing recommendations noted above. He also argues that his sentence is

unreasonable.  The Government contests these claims and also maintains that they are barred by the appellate-waiver provision contained in the plea agreement.

## II.  DISCUSSION

A.    <u>Alleged Breach of the Plea Agreement</u>

Because an appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement, *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008),[5] we must first address whether the Government's conduct during sentencing constituted a breach.  We review de novo whether the Government has breached a plea agreement.  *United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007).  In interpreting a plea agreement, we rely on general principles of contract law, *United States v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007), and therefore "look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea," *VanDam*, 493 F.3d at 1199.  We construe any ambiguities against the government as the drafter of the agreement.  *Cachucha*, 484 F.3d at 1270.

In this case, the plea agreement specifically states that relevant conduct will be used to calculate Mr. Rodriguz-Rivera's sentence, and the agreement describes relevant conduct as "conduct charged in any dismissed counts of the

---

[5]Unpublished decisions from this Court hold likewise.  *See United States v. Tilgham*, 211 Fed. Appx. 778, 781 (10th Cir. Jan. 9, 2007); *United States v. Young*, 206 Fed. Appx. 779, 782, 784 (10th Cir. Nov. 28, 2006).

indictment," as well as "all other uncharged related criminal activities." In addition, the agreement expressly requires the Government to "provide to the court and the United States Probation Office *all* information it deems relevant to determining the appropriate sentence in this case." (emphasis added). The same provision also permits the Government "to respond to comments made or positions taken by [Mr. Rodriguez-Rivera]" and "to make any recommendations it deems appropriate regarding the disposition of the case," so long as the recommendations are not contrary to the agreement. Although the Government also agreed to recommend a reduction based on acceptance of responsibility, this agreement was contingent on Mr. Rodriguez-Rivera's "continuing manifestation of responsibility as determined by the United States." The agreement specifically permits the Government to withdraw its recommendation if Mr. Rodriguez-Rivera fails to cooperate:

> If [Mr. Rodriguez-Rivera] denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct that the court determines to be true, willfully obstructs or impedes the administration of justice as defined in U.S.S.G. § 3C1.1 (or willfully attempts to do so) . . . the United States reserves the right to withdraw this recommendation without breaching this agreement.

Despite these unambiguous provisions, Mr. Rodriguez-Rivera contends that the Government breached the plea agreement by arguing that he was accountable for 65.728 kilograms of cocaine based on relevant conduct, as opposed to the 5.728 kilograms of cocaine discovered in his possession and set forth as the

factual basis for the guilty plea. He also contends that the Government breached the plea agreement by arguing for an enhancement based on his role in the offense and recommending against a reduction based on acceptance of responsibility.

We disagree. To begin, far from constituting a breach of the plea agreement, the Government's arguments concerning related conduct and the supervisory-role enhancement are required by the express language of the agreement: the Government specifically agreed to provide the court with all information germane to sentencing. The Government did not therefore breach the plea agreement by arguing that 65.728 kilograms of cocaine were attributable to Mr. Rodriguez-Rivera as relevant conduct and that Mr. Rodriguez-Rivera was subject to an enhancement based on his role in the offense.

Nor did the Government breach the plea agreement by recommending against a reduction for acceptance of responsibility. The agreement specifically notes that the Government may withdraw its recommendation for a reduction if Mr. Rodriguez-Rivera falsely contests relevant conduct found to be true or obstructs justice as defined in U.S.S.G. § 3C1.1. Here, both preconditions are present. Although the District Court found that 65.728 kilograms of cocaine were attributable to him as relevant conduct, Mr. Rodriguez-Rivera falsely contested this finding in his affidavit. In addition, because Mr. Rodriguez-Rivera's affidavit contradicts this finding, the Government could seek a two-level increase for obstruction of justice under § 3C1.1.

As a variation on his claim that the Government breached the plea agreement, Mr. Rodriguez-Rivera argues that the prosecutor engaged in prosecutorial misconduct by making the aforementioned sentencing recommendations. According to Mr. Rodriguez-Rivera, because the Government did not file its objections to the initial presentence report until after Mr. Rodriguez-Rivera sought safety-valve relief and a minor-role adjustment, the Government necessarily made its sentencing recommendations to retaliate against Mr. Rodriguez-Rivera for seeking such relief. For the reasons just explained, Mr. Rodriguez-Rivera is incorrect. The plea agreement expressly contemplates the inclusion of relevant conduct in determining the sentence and requires the Government to inform both the probation office and the court of all information that might be used for sentencing purposes. Absent an allegation that the information was false and unreliable, it was not misconduct to bring such information to the attention of the court and probation office. *See United States v. Dinwiddie*, 1992 WL 39049, at *1 (9th Cir. Feb. 28, 1992) (unpublished opinion) (holding that it is not misconduct for the prosecutor to bring relevant conduct to the attention of the district court even though such conduct was not discussed in plea agreement); *cf. United States v. Saxena*, 229 F.3d 1, 6 (1st Cir. 2000) (concluding that it is permissible to inform the probation office of a defendant's post-plea conduct to aid in preparation of the PSR because "the government has an unswerving duty to bring all facts relevant to sentencing to the

judge's attention.").

B.      Waiver of Appellate Rights

Because the Government did not breach the plea agreement, we now consider whether the appellate-waiver provision bars Mr. Rodriguez-Rivera's appeal. A defendant who waives appellate rights in a plea agreement may not appeal his sentence. *United States v. Smith*, 500 F.3d 1206, 1210 (10th Cir. 2007). We employ a three-prong test to determine whether the waiver of appellate rights in a plea agreement is enforceable. We examine "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).

1.      Scope of the Waiver

Under the plea agreement, Mr. Rodriguez-Rivera waived his right "to appeal a sentence imposed which is within the guideline range determined appropriate by the court," unless the court departed upward from the applicable range. Because Mr. Rodriguez-Rivera challenges his within-Guidelines sentence, his appeal falls within the scope of the waiver.

2.      Knowing and Voluntary Waiver

Mr. Rodriguez-Rivera contends that the District Court failed to specifically address the waiver of his appellate rights as required by Fed. R. Crim. P. 11(b)(1)(N) and that this renders the waiver unknowing and involuntary. *See Hahn*, 359 F.3d at 1325 (noting that we look for an adequate Rule 11 colloquy in determining whether an appeal waiver was entered into knowingly and voluntarily). Mr. Rodriguez-Rivera did not, however, object to this omission in the District Court. Accordingly, we review only for plain error. *See United States v. Edgar*, 348 F.3d 867, 870–72 (10th Cir. 2003) (applying plain-error review to the defendant's argument that the district court's failure to discuss the appellate waiver during the plea colloquy rendered the waiver unknowing and involuntary).

The District Court's failure to discuss the specific appellate-waiver provision in Mr. Rodriguez-Rivera's plea agreement is error that is plain. *Id.* at 871. ("[I]t is always error for a district court to fail to discuss an appellate waiver provision during a Rule 11 colloquy."). To satisfy the third prong of plain-error review, however, Mr. Rodriguez-Rivera must show that his substantial rights were affected by the error—that is, that "he would not have pleaded guilty if the district court had complied with Rule 11(b)(1)(N)." *Id.* at 871–72. Mr. Rodriguez-Rivera cannot make this showing.

The plea agreement includes a section entitled "Waiver of Appeal and Collateral Attack," which details the right to appeal waived by the defendant.

-11-

The agreement specifically states that Mr. Rodriguez-Rivera had sufficient time to discuss the case and the agreement with his attorney and is fully satisfied with his attorney's advice and representation. In addition, the agreement specifies that it is not the result of threats or coercion. The signature portion of the agreement states that Mr. Rodriguez-Rivera is pleading guilty because he "is guilty and is doing so freely and voluntarily." During the change-of-plea hearing, the court asked Mr. Rodriguez-Rivera whether he understood that he "may have the right to appeal any sentence that the court may impose subject to any waiver of appeal you may agree to in a plea agreement," to which Mr. Rodriguez-Rivera responded that he understood.[6] The Government then read portions of the plea agreement, including the appellate-waiver provision, into the record. The court asked Mr. Rodriguez-Rivera whether the portions read into the record reflected his understanding of the plea agreement, and he responded that they did. Finally, Mr. Rodriguez-Rivera reiterated that he was pleading guilty of his own free will and that he went over the matter thoroughly with his attorney and was satisfied with the representation of his attorney. *See id.* at 872 (noting similar facts as relevant in determining whether the defendant's substantial rights were affected by the court's failure to comply with Rule 11(b)(1)(N)).

Despite the contents of his plea agreement and his statements at the plea

---

[6]Although it does not satisfy Fed. R. Crim. P. 11(b)(1)(N), the court's statement is nonetheless relevant to whether Mr. Rodriguez-Rivera would have pleaded guilty if a proper colloquy had occurred.

colloquy—all of which indicate that Mr. Rodriguez-Rivera would have pleaded guilty even if the District Court had more thoroughly discussed the appellate waiver—Mr. Rodriguez-Rivera, who cannot read, write, or speak English, maintains that his former counsel never explained the plea agreement and its contents to him. He raised the same argument before the District Court in a motion to withdraw his guilty plea. The court held a hearing on the motion and took testimony from Mr. Rodriguez-Rivera, his former counsel, Mark Sachse, and the interpreter, who was present at the time Mr. Rodriguez-Rivera met with Mr. Sachse. The District Court also made factual findings related to this issue and specifically found that Mr. Sachse, through the aid of an interpreter, spent two hours and fifteen minutes explaining the terms of the plea agreement, including and especially the waiver of rights contained therein. Ample evidence in the record supports these findings. We therefore agree with the District Court that the terms of the agreement were explained to and understood by Mr. Rodriguez-Rivera. Accordingly, Mr. Rodriguez-Rivera has not demonstrated that his substantial rights were affected.

3.     Miscarriage of Justice

A waiver of appellate rights in a plea agreement cannot be enforced if doing so would result in a miscarriage of justice. *Hahn*, 359 F.3d at 1325. A miscarriage of justice occurs "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in

connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Id.* at 1327 (quoting *United States v. Elliott*, 264 F.3d 1171, 1173 (10th Cir. 2001)).

Mr. Rodriguez-Rivera contends that enforcing the waiver would result in a miscarriage of justice because he received ineffective assistance of counsel during the negotiation of the waiver. Although we typically require that ineffective assistance claims be brought on collateral review, in rare instances, such claims are appropriate for review on direct appeal. *See United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993). This is one such case. The issue was raised and ruled upon by the District Court when Mr. Rodriguez-Rivera moved to withdraw his guilty plea, and the record is sufficiently developed for review at this juncture. *See United States v. Hamilton*, 510 F.3d 1209, 1213 (10th Cir. 2007) (reviewing ineffective assistance claim on direct appeal where issue was raised and ruled upon by the district court and sufficient factual record existed); *Gordon*, 4 F.3d at 1570 (same); *see also Edgar*, 348 F.3d at 869 (dismissing claim for ineffective assistance in negotiation of plea because, although the record was factually developed, the issue had not been ruled upon by the district court).

We review ineffective assistance claims in this context according to the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this test, the defendant must show that his counsel's performance "fell

below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and that the deficient performance resulted in prejudice, *id.* at 687. In evaluating an ineffective assistance of counsel claim, we "accept the district court's underlying factual findings unless clearly erroneous," and "we review de novo whether counsel's performance was legally deficient and whether any deficiencies prejudiced the defendant." *Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 858 (10th Cir. 2005).

Mr. Rodriguez-Rivera argues that his representation was constitutionally deficient because Mr. Sachse failed to adequately inform him of the appellate waiver and because the plea agreement was not beneficial to him. As discussed above, the District Court made a factual finding that counsel adequately discussed the appellate-waiver provision with Mr. Rodriguez-Rivera. This finding is not clearly erroneous. Furthermore, the court found that Mr. Rodriguez-Rivera received some benefit from the plea agreement. Indeed, by entering into the plea agreement, the Government agreed to drop the conspiracy charge; thus, Mr. Rodriguez-Rivera avoided the possibility of a conviction on two counts instead of one. The Government also agreed to recommend a reduction for acceptance of responsibility.[7] Finally, the Government argued in support of a sentence at the low end of the applicable Guidelines range, as required by a provision in the plea

---

[7]Of course, the Government ultimately withdrew this recommendation, but the withdrawal was solely the result of Mr. Rodriguez-Rivera's own conduct.

agreement.  Accordingly, Mr. Rodriguez-Rivera has failed to demonstrate that his counsel was ineffective in negotiating the plea agreement and appellate waiver.[8]

### III.  CONCLUSION

Because we conclude that the plea agreement, which the Government did not breach, includes an enforceable waiver of appellate rights, we GRANT the motion to enforce the waiver and DISMISS Mr. Rodriguez-Rivera's appeal of his sentence.

---

[8]Mr. Rodriguez-Rivera also contends that enforcing the waiver is "otherwise unlawful" primarily because the Government, in his view, breached the plea agreement.  As discussed above, however, the Government did not breach the plea agreement.  Consequently, this argument has no merit.