**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DAVID A. ABSTON,

      Defendant-Appellant.

No. 07-5136
(D.Ct. No. 06-CR-00199-JHP)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **BRORBY** and **EBEL**, Circuit Judges.

Defendant-Appellant David A. Abston pled guilty to Count 1 for

distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and

Count 3 for possession of child pornography, in violation of 18 U.S.C.

§ 2252(a)(4)(B), and was sentenced to consecutive terms of 240 months

imprisonment on Count 1 and 120 months on Count 3. He now appeals both

sentences on grounds the district court: (1) erred in denying his motion to receive

impeaching and mitigating evidence; (2) abused its discretion in applying a five-

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

level upward adjustment for a pattern of exploiting minor children; and (3) erred in imposing a two-level upward adjustment for obstruction of justice. In response, the government moves for the appeal to be dismissed on appellate waiver grounds. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, grant the government's pending motion to dismiss the appeal, and dismiss Mr. Abston's appeal.

I. Factual and Procedural Background

In his plea agreement Mr. Abston stipulated to the following facts: On or about September 8, 2006, he distributed numerous graphic image and video files containing child pornography on the internet using Limewire (a file-sharing program), and he knew these files had been shipped in interstate or foreign commerce by computer and contained visual depictions of minors, some under the age of twelve, engaging in sexually explicit conduct. He further stipulated that on the same date an undercover Federal Bureau of Investigation (FBI) agent working from Florida conducted an online search for child pornography images and obtained child pornography files offered for distribution by Mr. Abston. After transmission of these images, an agent in Tulsa, Oklahoma, obtained a search warrant for Mr. Abston's residence, and during its execution Mr. Abston admitted possessing a computer at his residence and that he used Limewire for his peer-to-peer software. Mr. Abston's computer was seized and determined to have over

200 video files, which he admitted he knew traveled in interstate or foreign commerce and contained images of minor children engaging in sexually explicit conduct, including some showing children under the age of twelve.

Following his initial indictment for one count of knowingly distributing child pornography, an appearance hearing was set. On counsel's request, a summons, rather than a warrant, for Mr. Abston's appearance was issued. However, Mr. Abston failed to appear for the hearing and a warrant was issued for his arrest. Over the next twenty-four hours, several law enforcement agencies searched for Mr. Abston until he was apprehended and arrested at a movie theater in Bixby, Oklahoma, in possession of several thousands of dollars in cash, a check from selling his vehicle, and a loaded handgun in his front pocket.

Following a subsequent multiple-count indictment, Mr. Abston pled guilty to Count 1 for distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and Count 3 for possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and also consented to forfeiture of certain property. In his plea agreement, Mr. Abston not only admitted to the facts underlying these counts, but agreed to waive his right to directly appeal his convictions and sentences and/or collaterally attack them pursuant to 28 U.S.C. § 2255. The waiver provision, in relevant part, stated:

Appellate and Post-Conviction Waiver

> In consideration of the promises and concessions made by the United States in this Plea Agreement, the defendant knowingly and voluntarily agrees to the following terms:
>
> a.  The defendant waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a); and
>
> b.  The defendant reserves the right to appeal from a sentence which exceeds the statutory maximum ....

R., Vol. 1, Doc. 67 at 3.  Mr. Abston also signed a statement immediately following the waiver provision acknowledging his counsel had explained his appellate and post-conviction rights and that he knowingly and voluntarily waived those rights.  The plea agreement also provided:

> Nothing in this Plea Agreement, save and except any stipulations contained herein, limits the right of the United States to present to the Court or Probation Office, either orally or in writing, any and all facts and arguments relevant to the defendant's sentence that are available to the United States at the time of sentencing.

*Id.* at 14-15.  Furthermore, nothing in the stipulations portion of the agreement limited the government's right to present facts and arguments relevant to Mr. Abston's sentence.

During the plea hearing, the district court conducted a Rule 11 colloquy in which Mr. Abston confirmed he read and signed the plea agreement; freely and voluntarily agreed to its terms; and understood all of the provisions of the

agreement, including the provisions waiving his right to appeal or collaterally attack his conviction and the sentence imposed, which he further agreed he waived voluntarily and completely of his own free choice. Based on the representations in the plea agreement and Mr. Abston's statements made at the hearing, the court found his guilty plea was freely and voluntarily made, accepted his plea, and found him guilty of both counts.

Following the plea hearing, a probation officer prepared a presentence report calculating Mr. Abston's sentence under the applicable United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). On Count 1, for distribution of child pornography, the probation officer set his base offense level at 22, pursuant to U.S.S.G. § 2G2.2(a)(2), and increased his base level several increments for numerous specific offense characteristics, including five levels, pursuant to U.S.S.G. § 2G2.2(b)(5), for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor from 1999 until the instant offense. The probation officer explained the information on which this enhancement was based came from the Tulsa Police Department, which conveyed that in a pending state court case Mr. Abston had been charged with forcible sodomy and sexual abuse of twenty male victims, ranging from six to seventeen years of age on the dates of the offenses, which occurred from 1999 to 2006, and that the charges stemmed from statements these victims made to authorities. The probation officer

also increased the base offense level two levels, under U.S.S.G. § 3C1.1, for obstruction of justice for failing to appear at the initial appearance hearing, resulting in an adjusted offense level of 44.

With respect to Count 3, for possession of child pornography, the probation officer set Mr. Abston's base offense level at 18, pursuant to U.S.S.G. § 2G2.2(a)(1), and increased his base level with the same specific offense characteristics as Count 1, including five levels, pursuant to U.S.S.G. § 2G2.2(b)(5), for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor from 1999 until the instant offense. The probation officer again increased the base offense level two levels, under U.S.S.G. § 3C1.1, for obstruction of justice, for an adjusted offense level of 40. Finally, the probation officer applied U.S.S.G. § 3D1.2, regarding groups of closely related counts, and calculated the final adjusted offense level by applying the offense level for the most serious count with the highest offense level, which was Count 1, for a final adjusted offense level of 44. After reducing his offense level by three levels for acceptance of responsibility, the resulting total offense level was 41. An offense level of 41, together with Mr. Abston's criminal history category of I, resulted in a Guidelines sentencing range of 324 to 405 months imprisonment. With regard to the statutory sentence for each count, Count 1 ranged from a minimum term of imprisonment of five years to a maximum of twenty years, and Count 3 resulted

in a term of imprisonment of not more than ten years. *See* 18 U.S.C.

§ 2252(a)(2), (a)(4)(B), and (b)(1). Under U.S.S.G. § 5G1.1(a), it was determined

the sentence could not exceed the maximum statutorily-authorized sentence,

which was 240 months imprisonment on Count 1 and 120 months on Count 3.

Mr. Abston filed objections to the presentence report, including, in part,

objections to: (1) the two-level enhancement for obstruction of justice resulting

from his failure to appear at his initial appearance hearing; and (2) the five-level

enhancement for engaging in a pattern of sexual abuse with minors. In addition,

Mr. Abston filed a motion to release *Brady*[1] materials for the purpose of

disclosing impeaching and mitigating evidence,[2] to which the government

responded.[3] Following additional briefing by the parties, the district court denied

---

[1] *See Brady v. Maryland*, 373 U.S. 83 (1963).

[2] At the hearing on the matter, Mr. Abston argued he should receive: (1) information showing he provided the government invaluable information in another investigation in Oklahoma City, Oklahoma, including grand jury information from that investigation; and (2) information on how the images were recovered from his computer, including whether special software was used to recover them. He also argued he should not receive an enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor based on "hearsay upon hearsay" allegations in a pending molestation charge in a state court case, because no facts, only conclusions on the case, were presented in the presentence report.

[3] In response, the government argued, in part: (1) Mr. Abston's plea agreement expressly provided for no reduction for substantial assistance under U.S.S.G. § 5K, which would include any assistance Mr. Abston provided in a

(continued...)

Mr. Abston's motion for mitigating and impeaching sentencing evidence, based in part on the government's representations that it either provided the requested information to Mr. Abston or otherwise did not have possession of mitigating or impeaching evidence.

At the sentencing hearing, the government presented the testimony of two witnesses to address Mr. Abston's continuing objections to the two-level enhancement for obstruction of justice, five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, and any dispute over the number of images found on his computer, for the purpose of assessing his relevant conduct. First, the government introduced the testimony of an FBI agent who verified numerous images and videos were found on Mr. Abston's peer-to-peer file-sharing program, Limewire, and the fact Mr. Abston did not appear as summoned for his initial appearance hearing. The government's next witness was a Tulsa police detective assigned to the child crisis unit and

_____

[3](...continued)
different investigation to which counsel did not have access; (2) Mr. Abston stipulated in the plea agreement he distributed numerous files through Limewire; (3) Mr. Abston received substantial discovery, including the entire computer investigation report and the name of the agent who prepared it and could contact or depose the agent himself regarding whether any special software was used; (4) the affidavit in support of Mr. Abston's state molestation case was a matter of public record, and information on that case was obtained from individuals from the Tulsa Police Department whom Mr. Abston could contact or depose; and (5) the government did not have any mitigating or exculpatory evidence relating to Mr. Abston.

involved in the investigation of Mr. Abston in the state court prosecution on charges of lewd molestation and child sexual abuse. The purpose of the police detective's testimony was to corroborate a chart of victims in that case as provided to the government and Mr. Abston's counsel.[4] After considering Mr. Abston's objections to the presentence report, the evidence presented, the parties' arguments, and the applicable Guidelines and sentencing factors, the district court denied Mr. Abston's objections to the presentence report and imposed consecutive sentences of 240 months imprisonment on Count 1 and 120 months on Count 3.

## II. Discussion

Mr. Abston now appeals both sentences on grounds the district court: (1) erred in denying his motion to receive impeaching and mitigating evidence; (2) abused its discretion in applying a five-level upward adjustment for a pattern of exploiting minor children; and (3) erred in imposing a two-level upward

---

[4] Specifically, the FBI agent testified Mr. Abston's computer contained 1900 files, of which 1000 were in Mr. Abston's peer-to-peer file-sharing program, Limewire, and included 500 images or photos of child pornography and over 119 videos or movie files of known child victims. The Tulsa police detective testified that over sixty victims were interviewed who had contact with Mr. Abston from the early 1970s through most of 2006 and ranged in age from seven or eight years old to twelve or thirteen years old at the time of their alleged abuse. She further testified the interviews established a pattern of conduct of sexual abuse by Mr. Abston against these minors which was consistent with a classic progression-type grooming process used by pedophiles or child molesters. While these witnesses provided more explicit testimony as to Mr. Abston's computer files and his alleged pattern of sexual abuse conduct, any factual determination related to this evidence is not dispositive as to the appellate waiver at issue in this appeal.

adjustment for obstruction of justice. To support his argument regarding his motion for impeaching and mitigating evidence, Mr. Abston makes numerous claims, arguing in part that: (1) certain mitigating and impeaching evidence was critical to his sentencing hearing, including evidence to impeach allegations made against him by minors in the state court case; (2) the failure of the government to provide such information prejudiced him, as evidenced by the substantial sentence he received in light of the circumstances presented; (3) the district court improperly relied on the government's verbal and written representations that it did not have impeaching or mitigating evidence or access to such evidence when it was "abundantly clear" it possessed such information; and (4) the district court impermissibly allowed the government to present evidence at the sentencing hearing in favor of the enhancements when it had indicated during the prior motion hearing it did not intend to present evidence.

As to his argument against a five-level enhancement for a pattern of exploiting minor children, Mr. Abston argues no evidence supported the enhancement because no specific information as to each child in the state molestation case was provided. Finally, with regard to the two-level enhancement for obstruction of justice, Mr. Abston does not contest the facts supporting the adjustment, but disputes the district court's application of § 3C1.1 to those facts. He suggests that by failing to appear at the initial appearance hearing he did not

fail to follow an order of a district court but merely ignored a summons, and avoiding or fleeing arrest is a situation excluded from consideration for an obstruction of justice enhancement.

In response, the government moves for this appeal to be dismissed on appellate waiver grounds and, alternatively, addresses the merits of Mr. Abston's claims. In reply to the government's request for dismissal on waiver grounds, Mr. Abston contends his appeal falls within the "miscarriage of justice" exception to the appellate waiver rule because the district court misapplied the Guidelines in applying enhancements to increase his sentence length.

We begin by addressing the appellate waiver issue. We have jurisdiction to consider sentencing appeals even when the defendant has waived his right to appeal in an enforceable plea agreement. *See United States v. Shockey*, 538 F.3d 1355, 1356-57 (10th Cir. 2008). "A defendant who waives appellate rights in a plea agreement may not appeal his sentence." *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1214 (10th Cir. 2008). In *United States v. Hahn*, we adopted a three-prong analysis for determining whether an appellate waiver is enforceable, in which we examine whether: (1) the disputed appeal falls within the scope of the waiver of appellate rights; (2) the defendant knowingly and voluntarily waived his appellate rights; and (3) enforcing the waiver would result in a

miscarriage of justice.  *See* 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).

Under the third prong, which is the one Mr. Abston expressly states he is raising

here, a miscarriage of justice occurs in situations where:  (1) the district court

relied on an impermissible factor such as race; (2) ineffective assistance of

counsel resulted in connection with the negotiation of the waiver; (3) the sentence

exceeds the statutory maximum; or (4) the waiver is otherwise unlawful, *see id.* at

1327, meaning the error must "seriously affect the fairness, integrity or public

reputation of judicial proceedings," *United States v. Smith*, 500 F.3d 1206, 1212

(10th Cir. 2007) (internal quotation marks and citation omitted).  This list is

exclusive, and an appellate waiver will not result in a miscarriage of justice

unless one of these four situations occurred.  *See Shockey*, 538 F.3d at 1357.


In this case, while Mr. Abston expressly relies on the miscarriage of justice

exception, he does not explicitly indicate which of these four exclusive

"miscarriage of justice" situations he is relying on.  Clearly, his argument that the

district court misapplied the Guidelines in applying the contested enhancements

does not fit within the first three situations.  As to the fourth situation, concerning

the waiver being "otherwise unlawful," we do not look to "whether another aspect

of the proceeding may have involved legal error," which is what Mr. Abston is

contending, but look only "to whether 'the *waiver* [itself] is otherwise unlawful.'"

*Id.* (quoting *Smith*, 500 F.3d at 1213).  We have explained that "[t]o allow alleged

errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive." *Smith*, 500 F.3d at 1213. Thus, while Mr. Abston contends the district court committed error by applying certain enhancements, this is the very type of error we will not consider in determining whether a waiver is unlawful. As to Mr. Abston's claim the district court erred in not requiring the government to provide impeaching and mitigating evidence, the same principles apply. Nothing about this claim implicates the validity of the waiver provision of the plea agreement, especially given Mr. Abston entered the plea agreement after filing his initial *Brady* motion, which requested the court order the government to provide him with impeaching and mitigating evidence. Thus, he was aware of his request for such evidence before he entered the plea agreement.

Even if we give Mr. Abston the benefit of the doubt and look beyond the "miscarriage of justice" exception to the other two exceptions to appellate waivers, his appellate waiver must stand. This is because the disputed appeal falls within the scope of his waiver of appellate rights, and it is clear from the record, including the plea agreement and Rule 11 colloquy, that Mr. Abston knowingly and voluntarily waived those rights.

Finally, we recognize "an appellate waiver is not enforceable if the

Government breaches its obligations under the plea agreement." *Rodriguez-Rivera*, 518 F.3d at 1212. Thus, to the extent Mr. Abston is contending his appellate waiver is not enforceable because the government somehow breached its obligation under the plea agreement by pursuing the contested enhancements and presenting evidence in support thereof, his argument is also without merit. We review such a claim de novo, *see id.,* even where the defendant failed to object at the time of the alleged breach. *United States v. Werner,* 317 F.3d 1168, 1169 (10th Cir. 2003). In conducting our de novo review, we examine the nature of the government's promise and the defendant's reasonable understanding of that promise at the time of the guilty plea, using general principles of contract law. *See Rodriguez-Rivera,* 518 F.3d at 1212-13.

In this case, nothing in the plea agreement precluded the government from providing evidence to assist the court in sentencing. To the contrary, a reasonable reading and understanding of its unambiguous language establishes the parties' agreement that the government was not limited in presenting to the court or probation office any and all facts and arguments relevant to Mr. Abston's sentence and available to the government at the time of sentencing. Thus, the government was not precluded from providing all evidence germane to sentencing and did not breach the plea agreement by providing information used for enhancing his sentence. *Id.* at 1210, 1213.

While the government may have indicated during the hearing on Mr. Abston's request for mitigating and impeaching evidence that it did not intend to "put on any extensive evidence ... at the sentencing" or present the testimony of parents or children, it did indicate that, if needed, it would present testimony from the Florida or Oklahoma City agents and any other evidence the court needed. It also explained at the sentencing hearing that it was providing witness testimony regarding Mr. Abston's obstruction of justice and pattern of exploiting children enhancements based on his continuing objections to those enhancements. Thus, nothing about the representations made at the motion hearing or the evidence offered at sentencing demonstrates a breach of the plea agreement. For these reasons, we hold the plea agreement appellate waiver provision is valid for the purpose of dismissing this appeal in accordance with that provision.

## III.  Conclusion

For the foregoing reasons, the government's motion to dismiss is **GRANTED** and Mr. Abston's appeal is **DISMISSED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge