FILED
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**December 21, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AARON DEWAYNE TERRY,

Defendant - Appellant.

No. 20-7053
(D.C. No. 6:19-CR-00045-RAW-1)
(E.D. Okla.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **BACHARACH**, **MORITZ**, and **EID**, Circuit Judges.
_____

After Aaron Terry pleaded guilty to five counts of various financial and tax

crimes, he moved to enforce his plea agreement, arguing that the government breached its

obligation to give him an opportunity to provide substantial assistance and potentially

receive cooperation credit, thereby reducing his sentence. The district court denied

Terry's motion, and Terry appeals. For the following reasons, we affirm.

## Background

In August 2019, a grand jury returned a 15-count indictment against Terry for

various financial crimes. Terry was later charged by information in a separate criminal

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

case with two additional counts of tax fraud. Terry entered a plea agreement covering both cases, pleading guilty to five of the charged crimes.[1] In exchange for Terry's guilty plea, the government agreed to dismiss the remaining charges.

The plea agreement required Terry to make certain financial disclosures. Specifically, Terry agreed to disclose all his assets and "to provide waivers, consents[,] or releases requested by the United States Attorney's Office to access records to verify the financial information." R. vol. 1, 70.

A sealed plea-agreement supplement set forth additional terms related to Terry's cooperation with the government. In the supplement, Terry agreed to "cooperate with the United States regarding specific crimes, targets[,] and investigations," "comply[] with all reasonable instructions from the United States," and "submit[] to interviews by investigators and attorneys at such reasonable times and places to be determined by counsel for the United States." R. vol. 2, 26–27 (sealed). The supplement also included the potential sentencing results of such cooperation. Specifically, the supplement provided that if (and only if) the government believed Terry had provided "'substantial assistance,'" then the government "may in its discretion" request that the district court depart below the advisory United States Sentencing Guidelines range. *Id.* at 27 (quoting 18 U.S.C. § 3553(e)). The supplement also expressly stated that the government was not obligated to make any such request. Further, the agreement stated that "[a]t or before the

---

[1] Terry states, without a record cite, that he met with the government multiple times before he pleaded guilty. The government does not dispute that these meetings occurred.

time of sentencing, the United States will advise the [c]ourt of any assistance [Terry] provide[s]." *Id.*

In October, shortly after pleading guilty, Terry met with prosecutors and investigators.[2] Terry's lead attorney, Vicki Behenna, could not attend the meeting, so only Behenna's cocounsel attended. According to an email Behenna received from prosecutor Douglas Horn, the meeting went well, and another prosecutor who attended anticipated using Terry in the prosecution of his codefendant. Terry also apparently provided the government with a thumb drive containing documents relevant to another investigation. At the end of this meeting, the government requested a copy of Behenna's application for funds under 18 U.S.C. § 3006A(e), which she had previously filed ex parte under seal with the district court.[3]

Over the next several months, Behenna and Horn exchanged emails about Behenna's § 3006A(e) application and the possibility of further meetings with Terry. On December 6, Behenna asked about scheduling another interview. Horn responded that he had still not heard from Behenna regarding the government's request for the sealed § 3006A(e) application and that until this request had been fulfilled there was no need for another meeting. Terry (through counsel) moved for authorization to provide a copy of the § 3006A(e) application to the government and for a protective

---

[2] There is no transcript or other memorialization of this meeting in the record, so our understanding of what occurred derives largely from emails between counsel that Terry attached as exhibits to his motion to enforce the plea agreement.

[3] Section 3006A(e)(1) permits "[c]ounsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation" to request such services in an ex parte application.

order limiting disclosure of the application solely to the government. On December 30, the district court granted Terry's motion, and four days later, Behenna emailed the application to Horn.

In a January 24, 2020 email, Horn raised the prospect of an additional interview with Terry. Horn wrote that the government's agents were "willing to meet" but that the government was "unsure of any additional information" Terry could "provide that would be 'substantial assistance' in any additional investigations." R. vol. 2, 83 (sealed) (quoting § 3553(e)). He added that if Behenna sent "a proffer of the 'substantial' information that [Terry] c[ould] provide," he and Behenna could arrange a meeting with Terry before sentencing. *Id.* (quoting § 3553(e)).

Behenna responded on February 3, stating that Terry and cocounsel, who had attended the October interview, were "under the impression that the agents wanted to speak with [Terry]" about another investigation and that she could "ask [Terry] what other information he has that he thinks would be helpful." *Id.* at 82. There are no further exchanges between Behenna and Horn in the record regarding Terry's potential cooperation.

About five months later, the district court granted Terry's motion to continue his sentencing until after his codefendant's criminal trial so that the district court could be fully advised as to the extent of Terry's cooperation. Three days before the rescheduled sentencing date, Terry moved to enforce his plea agreement, arguing that the government had breached it by failing to provide him with an opportunity to

cooperate. Terry argued that (1) the government made binding assurances to him *before* he signed the plea agreement that he would be given the opportunity to substantially assist the government; (2) the plea agreement's language stating that the government "*will advise* the [c]ourt of any assistance provided by defendant" required it to provide Terry with an opportunity to cooperate after he signed the plea; and (3) even if the plea agreement did not require the government to provide Terry with an opportunity to cooperate, the government's failure to provide one amounted to a breach because the government's failure was motivated by bad faith. *Id.* at 47 (quoting *id.* at 27).

After conducting a hearing on Terry's motion, the district court ruled that the plea agreement did not obligate the government to provide Terry with an opportunity to cooperate. And even if the plea agreement created such an obligation, the district court concluded, the government gave Terry that opportunity. It further determined that any failure to give Terry that opportunity was not motivated by bad faith and that it had been apprised as to the extent of Terry's cooperation. The district court later issued a one-page written order reiterating those findings. It sentenced Terry to concurrent terms of 48 and 36 months in prison, imposed concurrent one- and three-year terms of supervised release, and ordered Terry to pay certain monetary penalties.

Terry now appeals the district court's denial of his motion to enforce the plea agreement.

**Analysis**

We "review de novo whether the [g]overnment has breached a plea agreement."
*United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008)). We review
any underlying factual findings for clear error. *United States v. Elashyi*, 554 F.3d 480,
501 (5th Cir. 2008); *see also United States v. Raymond*, 369 F. App'x 958, 962 (10th Cir.
2010) (unpublished). Under clear-error review, "[w]e will not disturb factual findings
'unless they have no basis in the record.'" *United States v. Jordan*, 806 F.3d 1244, 1252
(10th Cir. 2015) (quoting *United States v. Martin*, 163 F.3d 1212, 1217 (10th Cir. 1998)).

Terry argues that the plea agreement required the government to offer him an
opportunity to cooperate. "In interpreting a plea agreement, we rely on general
principles of contract law." *Rodriguez-Rivera*, 518 F.3d at 1212. Thus, we "look to
the express language in the agreement to identify both the nature of the government's
promise and the defendant's reasonable understanding of this promise at the time of the
entry of the guilty plea." *Id.* at 1212–13 (quoting *United States v. VanDam*, 493 F.3d
1194, 1199 (10th Cir. 2007), *overruled on other grounds by Puckett v. United States*,
556 U.S. 129 (2009)). But in this case, we ultimately decline to reach Terry's
argument about what the plea agreement required. *See Elkins v. Comfort*, 392 F.3d
1159, 1162 (10th Cir. 2004) ("We have discretion to affirm on any ground adequately
supported by the record."). Assuming without deciding that the plea agreement
imposed such an obligation on the government, we find—consistent with the district

court's conclusion—that the government provided Terry an opportunity to cooperate.[4]

Terry cites one out-of-circuit case, *United States v. Ringling*, 988 F.2d 504 (4th Cir. 1993), to support his view that the government did not provide him an opportunity to cooperate. But *Ringling* is distinguishable. There, the government never interviewed the defendant. *Id.* at 505. By contrast, here, the government met with Terry for an interview shortly after he entered into his plea agreement.

Moreover, contrary to Terry's contention, nothing in the parties' subsequent email exchanges establishes that the government "with[eld] future cooperation opportunities." Aplt. Br. 14. In an email to Behenna following the initial interview, Horn stated that the interview went well and that the government anticipated using Terry in his codefendant's prosecution. The parties exchanged emails over the next

---

[4] Terry relatedly argues that before he entered into the plea agreement, the government promised him the opportunity to earn cooperation credit in exchange for his guilty plea. According to Terry, the government promised him "a series of debriefings with the government, each covering a different topic"; and "[i]f the government believed [Terry's] assistance was substantial, it would move for a downward departure at sentencing." Aplt. Br. 12. But our analysis of what Terry reasonably understood the government to be promising him when he entered his guilty plea derives from the text of the plea agreement itself. *See Rodriguez-Rivera*, 518 F.3d at 1212–13. Further, here, the agreement contained an explicit integration clause, providing that "[t]his written agreement[] supersedes all prior understandings, if any, whether written or oral." R. vol. 1, 74; *see also United States v. Reyes Pena*, 216 F.3d 1204, 1212 (10th Cir. 2000) ("[T]he plea agreement contained an integration clause, stating that the final version represented the complete agreement between the government and [the defendant]. Thus, [the defendant] is unable to alter the terms of the plea agreement with reference to the government's earl[ier representations]."). Terry's suggestion that pre-plea discussions or representations informed his reasonable understanding of what the government promised him is therefore unpersuasive.

several weeks, mostly regarding the government's request to see Behenna's § 3006A(e) application. And when Behenna asked on December 6 about scheduling a follow-up interview with Terry, Horn would not agree until Behenna disclosed the § 3006A(e) application.

Once Behenna disclosed the application in January 2020, Horn renewed talks about a subsequent interview. Specifically, Horn responded to Behenna's December 6 email, stating that his agents were "willing to meet" but that he was "unsure of any additional information that [Terry] c[ould] provide that would be 'substantial assistance' in any additional investigations." R. vol. 2, 83 (sealed) (quoting § 3553(e)). Horn added that he could arrange a meeting before sentencing if Behenna gave "a proffer of the 'substantial' information that [Terry] c[ould] provide." *Id.* (quoting § 3553(e)). On February 3, Behenna responded to Horn's request for a proffer by stating that although she was not at the initial October meeting, she "was under the impression that the agents wanted to speak" with Terry about two additional investigations and that she could "ask [Terry] what other information he has that he thinks would be helpful to [the government] if [Horn would] like." *Id.* at 82.

The parties do not dispute that Horn never responded to Behenna's email. Nevertheless, we do not find that Behenna's February 3 response to Horn's explicit request constituted a proffer. Rather, Behenna simply indicated she would talk with Terry about what information he might proffer. What's more, in the over six months between Behenna's response to Horn's email and Terry's sentencing, Behenna never

8

followed up with a proffer or otherwise inquired about Terry's cooperation. Given this sequence of events, the district court's factual finding that Terry had an opportunity to cooperate has some "basis in the record" and was therefore not clearly erroneous. *Jordan*, 806 F.3d at 1252 (quoting *Martin*, 163 F.3d at 1217). Accordingly, assuming the plea agreement required the government to offer Terry an opportunity to cooperate, the government did not break that promise.

Next, Terry challenges the district court's conclusion—which was apparently based on the parties' sentencing memoranda—that the government provided adequate information regarding Terry's cooperation. In support, Terry describes allegedly inaccurate representations made by the government in its response to Terry's motion for downward variance in the district court. The government responds that its filings connected to Terry's motions to continue sentencing and for a downward variance, as well as its sentencing memorandum, provide "extensive background for the arguments heard by the district court" on Terry's motion to enforce the plea agreement. Aplee. Br. 21–22 n.9.

But none of these district-court filings or any accompanying exhibits are in the appellate record. It is Terry's responsibility, as the appellant, to present us with the record necessary to evaluate the district court's decision. *See United States v. Vasquez*, 985 F.2d 491, 495 (10th Cir. 1993) ("The appellant is responsible for insuring that all materials on which he [or she] seeks to rely are part of the record on appeal."). Without the complete record before us, "we must defer to the trial court's decision." *Id.* (quoting *Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir.

9

1989)); *see also* 10th Cir. R. 10.4(B) ("When the party asserting an issue fails to provide a record . . . sufficient for considering that issue, the court may decline to consider it."). We therefore defer to the district court's conclusion that the government complied with the plea agreement by providing adequate information about Terry's cooperation.[5]

## Conclusion

We affirm the district court's order denying Terry's motion to enforce the plea agreement because Terry received an opportunity to cooperate with the government and failed to present relevant documents in the record on appeal to challenge the district court's conclusion that the government adequately informed the district court as to Terry's cooperation.

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

[5] Terry also argues that even if the plea agreement did not obligate the government to provide him with an opportunity to cooperate, failure to provide such an opportunity amounts to a breach when the government's decision is motivated by impermissible animus or is not rationally related to a legitimate government end. But for the reasons described above, we conclude that Terry did have the opportunity to cooperate. We therefore decline to reach Terry's bad-faith argument.