**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 21, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WILMER LEYVA-MATOS,

    Defendant-Appellant.

No. 09-2304

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 2:08-CR-2410-MV-2)**

---

Paul J. Rubino, Las Cruces, New Mexico, for Defendant-Appellant.

John M. Pellettieri (Kenneth J. Gonzales, United States Attorney, and Stephen H. Wong, Assistant United States Attorney, Albuquerque, New Mexico; and Lanny A. Breuer, Assistant Attorney General, and Greg D. Andres, Acting Deputy Assistant Attorney General, Washington, D.C., with him on the brief), United States Department of Justice, Washington, D.C., for Plaintiff-Appellee.

---

Before **KELLY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

    Defendant Wilmer Leyva-Matos pleaded guilty to possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and conspiring to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846. In his plea

agreement, Defendant waived his right to appeal. The district court rejected certain stipulations in Defendant's plea agreement and sentenced him to twenty-six months imprisonment, followed by two years of supervised release. Defendant appeals, alleging the district court improperly considered certain information he provided the Government with the understanding that it would not be used against him. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). See United States v. Hahn, 359 F.3d 1315, 1322, 1324 (10th Cir. 2004) (en banc) (holding that we have jurisdiction under 28 U.S.C. § 1291 over sentencing appeals "even when the defendant has waived his right to appeal in an enforceable plea agreement"). Because we conclude Defendant's appellate waiver is valid and enforceable, we dismiss this appeal without addressing the merits.

I.

In 2008, Border Patrol agents stopped Defendant and co-defendant Viktor Elizalde at a checkpoint on Interstate 10 west of Las Cruces, New Mexico. During a consensual search of the vehicle, Border Patrol agents discovered an unloaded handgun in the vehicle's center console and 26.2 kilograms of marijuana hidden behind the car's trim panels. They also discovered ammunition for the handgun in Elizalde's bag. Elizalde waived his Miranda rights and admitted the gun was his. Further investigation revealed the car belonged to Defendant's parents.

After a New Mexico grand jury returned an indictment against Defendant for one count of possessing marijuana with intent to distribute in violation of 21 U.S.C.

2

§ 841(a)(1) and one count of conspiring to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846, Defendant entered into an agreement to plead guilty to both charges. He also agreed to provide information about the crimes with which he and Elizalde were charged in exchange for the Government's promise that it would not use any of the information he provided against him. See U.S.S.G. § 1B1.8 (providing that "[w]here a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement"). In the plea agreement, the Government agreed to certain stipulations that, if accepted by the district court, would reduce the range of Defendant's sentence under the Sentencing Guidelines. The Government also stated, however, that it did not agree to recommend a specific sentence nor to support, oppose, or not oppose any sentence proposed by the Defendant. See Fed. R. Crim. P. 11(c). Additionally, Defendant waived his appeal rights and agreed that the district court could accept or reject the stipulations in its discretion. The plea agreement provides:

> The United States and the defendant understand that the above stipulations are not binding on the Court and that whether the Court accepts these stipulations is a matter solely within the discretion of the Court after it has reviewed the presentence report. *The defendant understands and agrees that if the Court does not accept any one or*

3

*more of the above stipulations, the defendant hereby waives the right to appeal the Court's rejection of such stipulations.*

R. Vol. 1 at 11 (emphasis added).  A section titled "Waiver of Appellate Rights" also provides:

The defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. *Acknowledging that, the defendant knowingly waives the right to appeal this conviction and/or any sentence within the statutory maximum authorized by law.*  In addition, the defendant agrees to waive any collateral attack to this conviction and/or sentence pursuant to 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.

Id. at 11–12 (emphasis added).

At the sentencing hearing, the district court accepted certain stipulations in the plea agreement but rejected others.  The court's calculations resulted in an offense level of 16.  With Defendant's criminal history category of I, the Guidelines range calculated by the district court was twenty-one to twenty-seven months imprisonment.  The court then considered the factors in 18 U.S.C. § 3553(a), focusing on the disparity between the mandatory five years imprisonment Elizalde faced for his gun possession conviction and Defendant's Guidelines range, and imposed a sentence of twenty six months, followed by two years of supervised release.[1]  On appeal, Defendant contends the district court improperly used

---

[1] Neither party disputes the validity of the plea agreement, but the district court does not appear to have explicitly accepted or rejected it.  The magistrate judge who conducted the Fed. R. Crim. P. 11 plea colloquy accepted Defendant's guilty plea but said he would "defer acceptance of the plea agreement to the district court."  At Defendant's sentencing hearing, the district court never explicitly accepted or
(continued...)

4

information Defendant provided to aid in the Government's prosecution of Elizalde to calculate his sentence.

## II.

We review de novo the question whether a defendant's waiver of his appellate rights in a plea agreement is enforceable. United States v. Ibarra-Coronel, 517 F.3d 1218, 1221 (10th Cir. 2008). The Government may raise this issue in its principal brief, as it did in this appeal. Id. at 1221 n.3. In determining whether Defendant's appellate waiver is enforceable, we consider the three prongs outlined in Hahn: (1) whether this appeal falls within the scope of Defendant's waiver of his appellate rights; (2) whether Defendant knowingly and voluntarily waived his appellate rights; and (3) "whether enforcing the waiver would result in a miscarriage of justice." Hahn, 359 F.3d at 1325.

Defendant failed to file a reply brief and provided little analysis on the waiver question at oral argument. When asked to explain why the appellate waiver should not be enforced, Defendant's counsel responded "that line of cases, Hahn, Porter, and

_____

[1](...continued)
rejected the plea agreement but appears to have worked within its terms, discussing which of the stipulations it would accept. In United States v. Smith, 500 F.3d 1206 (10th Cir. 2007), we concluded that when the district court operated within the terms of the plea agreement by questioning the defendant about its terms during the Rule 11 colloquy and dismissing other counts, its actions amounted to constructive acceptance of the plea agreement. Id. at 1213 n.3. Likewise, we conclude the district court in the instant case constructively accepted the plea agreement by working within its terms and accepting certain stipulations while rejecting others.

Shockey, allows for an exception to [the enforcement of appellate waivers], and I respectfully submit we come underneath that exception." When asked to elaborate which exception applied here, counsel replied, "Miscarriage of justice is the one that jumps out." When asked, "How is there a miscarriage of justice?" counsel merely responded, "Plain error," then alleged that the district court committed plain error when it "used information that was protected by the Kastigar debrief."[2] We therefore consider only the miscarriage of justice prong of the Hahn analysis.

Enforcement of an appellate waiver results in a miscarriage of justice only if (1) "the district court relied on an impermissible factor such as race," (2) counsel provided ineffective assistance in connection with the negotiation of the waiver, (3) "the sentence exceeds the statutory maximum," or (4) the waiver itself is otherwise unlawful. Id. at 1327 (internal quotations omitted). The district court does not appear to have relied on an impermissible factor such as race in sentencing Defendant. Nor does Defendant allege counsel provided ineffective assistance. At his Rule 11 hearing, Defendant acknowledged that the maximum statutory penalties for his offense are up to five years in prison, a fine of $250,000, two years of supervised release, and a $100 special penalty assessment. Defendant's sentence of

---

[2] Both parties refer to Defendant's meetings with the Government as "Kastigar briefings." See Kastigar v. United States, 406 U.S. 441 (1972). The agreement to keep confidential the information Defendant shared at these meetings seems to be properly made under § 1B1.8. We are unsure why the parties describe these briefings or debriefings as "Kastigar" debriefings.

twenty six months and two years of supervised release per offense, to run concurrently, does not exceed the statutory maximum. It appears Defendant's argument, then, is that enforcing the appellate waiver would result in a miscarriage of justice because the waiver is "otherwise unlawful."

An appellate waiver is "otherwise unlawful" only if it seriously affects "the fairness, integrity or public reputation of judicial proceedings." Hahn, 359 F.3d at 1327. "This exception looks to whether the *waiver* is otherwise unlawful, not to whether another aspect of the proceeding may have involved legal error." United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007) (internal citations and quotations omitted). "An appeal waiver is not 'unlawful' merely because the claimed error would, in the absence of waiver, be appealable. To so hold would make a waiver an empty gesture." United States v. Sandoval, 477 F.3d 1204, 1208 (10th Cir. 2007).

When faced with appellate waivers like the one in this case, we have consistently applied this principle and enforced such waivers accordingly. In United States v. Porter, 405 F.3d 1136 (10th Cir. 2005), the defendant pleaded guilty but appealed his sentence, contending, among other things, that United States v. Booker, 543 U.S. 220 (2005), entitled him to resentencing because the district court treated the Sentencing Guidelines as mandatory. His plea agreement included a waiver of his appellate rights, however, and we explained the relevant inquiry was not whether the defendant's "sentence is unlawful in light of Booker's remedial holding, but

7

whether subsequent changes in the law render his appeal waiver itself unenforceable." 405 F.3d at 1144. We dismissed the appeal, concluding Booker did not compel us to hold that the defendant's waiver was unlawful and that enforcing the waiver did not "seriously affect the fairness, integrity, or public reputation of . . . judicial proceedings." Id. at 1145. Again, in United States v. Shockey, 538 F.3d 1355 (10th Cir. 2008), the defendant's plea agreement included an appellate waiver. The defendant nonetheless appealed, alleging his sentence was ambiguous and inherently contradictory and arguing that enforcing his appellate waiver in such a situation would result in a miscarriage of justice. Id. at 1356. We noted that our precedent foreclosed such an argument; despite the "inscrutable" nature of the defendant's sentence, "enforcement of his plea agreement's appellate waiver would not render *the waiver itself* unlawful." Id. at 1357. Thus, we dismissed the defendant's appeal. Id. at 1358.

Likewise, nothing in this case indicates that the waiver itself is unlawful. Defendant bears the burden to demonstrate that enforcing the waiver would result in a miscarriage of justice, and he has not done so.[3] United States v. White, 584 F.3d

---

[3] In criticizing the majority opinion, the dissent makes much of the Government's promise not to use the information Defendant provided against him. The dissent argues the Government breached its promise by giving this information to the district court. The dissent further argues this action "taint[ed] the district judge," and that we should, therefore, remand for resentencing before a different judge. Dissent at 5.

The Government submitted a § 5K1.1 motion in this case, requesting a
(continued...)

8

935, 948 (10th Cir. 2009).  We reject counsel's invitation to consider whether the

merits of Defendant's appeal reveal plain error.  Because we conclude Defendant's

waiver of his right to appeal his sentence is enforceable, we dismiss Defendant's

appeal.

---

[3](...continued)
downward departure for Defendant's substantial assistance.  When the district court requested the information Defendant provided, the Government appropriately submitted it in accordance with § 1B1.8(b)(5).  This provision specifically states:

> The provisions [restricting the Government's use of the protected information in determining the applicable guideline range] shall not be applied to restrict the use of information: . . . in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under § 5K1.1 (Substantial Assistance to Authorities).

U.S.S.G. § 1B1.8(b)(5).  The Government did not attempt to use this information against Defendant.  Consequently, the Government did not breach any agreement it made with Defendant.

Additionally, Defendant did not raise the argument the dissent crafts.  Rather, Defendant explained in his brief at page nine:  "Application note 1 [to § 1B1.8] clarifies that 'This provision does not authorize the government to withhold information from the court but provides that self-incriminating information obtained under a cooperating agreement is not to be used to determine the defendant's guideline range.'"  Defendant then argued:  "This provision requires a sentencing court to honor the government's promise that self-incriminating information volunteered by the defendant under a cooperation agreement would not subject a defendant to a harsher sentence."  At oral argument, when asked why he did not object to the Government's providing this information to the district court, defense counsel responded:  "Well, your honor, as I understand the law, the judge can ask for that information, and the Government can't say 'I'm not going to give it to you.'"  Thus, Defendant himself acknowledges the Government did not breach any promise merely by providing protected information to the district court.  Nor was the district court irremediably tainted by considering Defendant's protected information because it is permitted to consider such information when evaluating a § 5K1.1 motion.

9

APPEAL DISMISSED.

09-2304 - *United States v. Leyva-Matos*

**HARTZ**, Circuit Judge, dissenting:

I respectfully dissent. The government breached its promise to Mr. Leyva-Matos when it disclosed to the district court what he had said in his post-plea debriefings. The district court then used what he said to increase his offense level under the United States Sentencing Guidelines, and sentenced him accordingly. I would hold that the government's breach frees Mr. Leyva-Matos from his promise not to appeal his sentence. I would then hold that the use by the district court of Mr. Leyva-Matos's debriefings requires that we set aside his sentence and remand for resentencing by another judge.

Mr. Leyva-Matos executed his plea agreement on February 10, 2009, and was debriefed on February 27 and June 22. The agreement contemplated that he would provide information to the government. It states:

> If the defendant meets all of the criteria set forth at 18 U.S.C.
> § 3553(f) and U.S.S.G. § 5C1.2, including providing a complete and
> truthful statement to the Government concerning all information and
> evidence the defendant has about the offense or offenses that were
> part of the same course of conduct underlying this agreement, the
> defendant is entitled to a reduction of two (2) levels, pursuant to
> U.S.S.G. § 2D1.1(b)(11).

R., Vol. 1 at 11.

The written agreement does not include a provision that Mr. Leyva-Matos's statements could not be used against him. But there is no question that the government so promised. The government's answer brief in this court says: "In accordance with *Kastigar v. United States*, 406 U.S. 441 (1972), the government

agreed not to use the information Leyva-Matos provided at the debriefings in any criminal case against him." Aplee. Br. at 6. (*Kastigar* held that the government can compel testimony from an unwilling witness if the witness is conferred immunity from use of the compelled testimony in later criminal proceedings.) The brief refers to a postsentencing letter sent on December 4, 2009, by the prosecutor to Mr. Leyva-Matos's attorney. That letter ends: "[W]e unequivocally affirm that when we met with Mr. Leyva-Matos we did not intend for the information from his debriefings to be used against him at sentencing, absent an extenuating circumstance not present in this case." Unopposed Motion to Supplement the Record on Appeal, Ex. B, *United States v. Leyva-Matos*, No. 09-2304 (10th Cir. filed May 15, 2010). The letter was in response to a request from Mr. Leyva-Matos's attorney for a copy of the *Kastigar* agreement. The letter explained that "although we did have an understanding regarding the use of information provided by your client during the debriefs, we never reduced an agreement to writing." *Id.*

Because of the government's promise, the district court should not have been informed of what Mr. Leyva-Matos said in his debriefings. In *United States v. Shorteeth*, 887 F.2d 253, 257 (10th Cir. 1989), this court interpreted USSG § 1B1.8 to "require the [plea] agreement to specifically mention the court's ability to consider defendant's disclosures during debriefing in calculating the appropriate sentencing range before the court may do so."

Nevertheless, the debriefing statements were disclosed to the district court. Before the sentencing hearing the court conducted a telephone status conference with the prosecutor and defense counsel. During the conference the court requested investigator notes and reports of Mr. Leyva-Matos's debriefings. The court may well have assumed that it was entitled to review the debriefings because § 1B1.8(b)(5) states that debriefing information can be used "in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under § 5K1.1 (Substantial Assistance to Authorities)." Paragraph (b)(5) was added to the guidelines in 1992, after *Shorteeth*. In any event, neither counsel objected, and the materials were provided to the court.

At Mr. Leyva-Matos's sentencing hearing on November 9, 2009, however, the district court relied on his debriefing statements for purposes other than to determine whether a § 5K1.1 departure was warranted. It found, contrary to the stipulations in the plea agreement, that several enhancements should be applied to Mr. Leyva-Matos's offense level under the guidelines. For example, the court said:

> First, with respect to the enhancement for possession of the weapon, Mr. Leyva-Matos admitted . . . . These admissions are sufficient to support a two-level enhancement for possession of a dangerous weapon during a drug trafficking offense pursuant to Section 2D1.1(b)(1).

R., Vol. 4 at 32–33.[1]

Mr. Leyva-Matos's attorney did not object at the hearing to the district court's use of his debriefing statements. On November 18, however, his attorney filed an "Unopposed Motion to Reconsider" on the ground that the court had "improperly used information provided by the Defendant pursuant to his plea agreement and pursuant to his *Kastigar* debriefing to determine the applicable guideline range, to deny the stipulations in the plea agreement and to deny the government's downward departure motion." (footnote omitted). *United States v. Leyva-Matos*, No. CR-08-2410-MV, Doc. 109 at 1 (D.N.M. November 18, 2009). (Contrary to this statement in the motion, the district court granted the government's downward-departure motion under § 5K1.1.) The government did not object to the motion on the ground of untimeliness or file a response. On November 30 the district court entered a judgment on Mr. Leyva-Matos's sentence. Two months later the court entered an order denying the motion. Addressing the merits of Mr. Leyva-Matos's motion, the court ruled that even if the debriefing statements were privileged, "the Court finds ample support for Mr. Leyva-Matos's sentence without consideration of the information he provided in his debriefing sessions with the government." *Id.*, Doc. 123 at 6 (January 27, 2010).

---

[1] I have deleted the specific admissions so that a new judge conducting the sentencing would not be tainted by the information.

Putting aside for a moment the procedural issues on appeal, this seems to me to be a clear case for reversal: The government breached its promise to Mr. Leyva-Matos that his debriefing statements could not be used against him. Those statements were provided to the district court and used by the district court to enhance his offense level at the time of sentencing. This court's practice has been that when the prosecution taints the district judge by making a presentation in violation of its agreement with the defendant, we must reverse the sentence and remand for resentencing by another judge, even though there has been no misconduct by the sentencing judge herself, and even if the sentence imposed would have been a perfectly justified and reasonable one in the absence of the taint. *See United States v. Cachucha*, 484 F.3d 1266, 1271 (10th Cir. 2007); *see also United States v. Foster*, 889 F.2d 1049, 1055–56 (11th Cir. 1989) (breach of promise not to use debriefing statements). Because sentencing is an exercise of judicial discretion, it is impossible to know if the taint affected the judge's decision making.

I now turn to the procedural issues which could bar relief for Mr. Leyva-Matos. First, in his plea agreement he waived his right to appeal his sentence. But his promise not to appeal is not binding if the government first broke its promise to him. As we have said, "'[A]n appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement.'" *United States v. Trujillo*, 537 F.3d 1195, 1200 (10th Cir. 2008), quoting *United States v.*

-5-

*Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008). I am not aware of any case in which we have held that an appeal waiver bars the defendant from raising on appeal the contention that the government breached its obligations under a plea agreement. Not only should this result follow from considerations of contract law, but to rule otherwise would be a manifest miscarriage of justice. To be sure, Mr. Leyva-Matos's attorney has done a poor job of raising this point on appeal, as the majority opinion clearly describes. But the burden is on the government, as the movant, to establish that the appeal should be dismissed. In my view, it has not satisfied its burden.

Even if this appeal is allowed, however, there is a second potential procedural barrier. Mr. Leyva-Matos did not raise a timely objection to the disclosure of his debriefing statements to the judge. He did, however, raise an objection several days after sentencing; and the district court rejected the objection on the merits, not on the ground that it was untimely. Ordinarily, we do not hold on appeal that an objection was untimely if the opposing party did not object on the ground of timeliness and the district court did not dispose of the tardy objection on that ground. *See Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam) ("where the Government failed to raise a defense of untimeliness until after the District Court had reached the merits, it forfeited that defense"); *Hicks v. Franklin*, 546 F.3d 1279 (10th Cir. 2008) (the state forfeited its right to object to untimely objection to magistrate judge's report). I do not

wish to minimize the importance of making timely objections. Mr. Leyva-Matos's attorney should have objected when the district court requested the debriefing statements, although he may have assumed that USSG § 1B1.8(b)(5) overrode the government's promise, at least so long as the district court used the statements only in considering the motion under USSG § 5K1.1.[2] (He also should have objected at sentencing; but by that time the judge had been tainted, so resentencing by another judge would have been required regardless.) On the other hand, the failure to object is perhaps less culpable than usual because the court's request was on the telephone, the prosecutor should also have objected, and any objection by defense counsel (as opposed to the prosecutor) would have implicitly informed the court that the debriefing statements could be harmful to Mr. Leyva-Matos at sentencing. In any event, I think that this is an appropriate case to address the merits of Mr. Leyva-Matos's claim, rather than awaiting a possible habeas claim of ineffective assistance of counsel.

I am disappointed that my colleagues on this panel disagree with my views. But I am much more disappointed in the government. It appears to acknowledge

---

[2]It seems to me that if a district court wishes to review debriefing materials in considering a § 5K1.1 motion, it should not review them until it has made its findings on all other factual matters disputed at sentencing. Only then can one be confident that the materials did not affect those findings. Otherwise the government's promise that the defendant's debriefing statements will not be used against him at sentencing will be a promise of questionable value, and—perhaps more importantly—defense counsel will be reluctant to advise clients to agree to such debriefings.

that it breached its promises to Mr. Leyva-Matos. I would have hoped that rather than challenging his appeal, it would have confessed error. Such a confession would not have injured its relationship with the judge below, because the error was solely the government's.