FILED
United States Court of Appeals
Tenth Circuit

April 1, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

AMBER NICOLE WOODMORE,

    Defendant - Appellant.

No. 22-7022
(D.C. No. 6:20-CR-00004-JFH-4)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **PHILLIPS** and **McHUGH**, Circuit Judges.
_____

Defendant-Appellant Amber Nicole Woodmore challenges her agreement to plead guilty to one count of conspiring to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Specifically, Ms. Woodmore contends that she did not make her plea knowingly and voluntarily and that she received ineffective assistance of counsel.

Exercising jurisdiction under 28 U.S.C. § 1291, we enforce the appellate waiver contained in Ms. Woodmore's plea agreement and **dismiss** her appeal.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1(a) and Tenth Circuit Rule 32.1(A).

# I

## A

On January 14, 2020, a federal grand jury in the Eastern District of Oklahoma returned a twenty-one-count indictment against Ms. Woodmore and eleven other defendants, charging them with various drug-trafficking and money-laundering offenses in connection with the operation of a methamphetamine-trafficking organization.  Ms. Woodmore was named in three counts of the indictment: conspiracy to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count One); conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1) (Count Nine); and money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2 (Count Fourteen).  In support of Ms. Woodmore's drug trafficking conspiracy charge (Count One), the indictment listed as an overt act a money transfer of $800 that Ms. Woodmore sent from a Walmart in McAlester, Oklahoma to a recipient in California.

## B

### 1

Ms. Woodmore was represented by court-appointed counsel, Michael McGuire, throughout the trial-court proceedings.  On March 19, 2021, Ms. Woodmore filed a notice of intent to plead guilty pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement.  Per the terms of the plea agreement, Ms. Woodmore pleaded guilty to Count One of the indictment—conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and

841(b)(1)(A)—in exchange for the government dismissing the remaining charges and recommending that she receive a reduction under the U.S. Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.") for acceptance of responsibility.  Additionally, Ms. Woodmore explicitly waived her appellate and post-conviction rights, except for the right to bring claims of ineffective assistance of counsel on collateral review pursuant to 28 U.S.C. § 2255.

In the plea agreement, the parties agreed under Federal Rule of Criminal Procedure 11(c)(1)(C) to a sentencing range of 151 to 188 months.  The plea agreement provided that it was binding on "only" the government and Ms. Woodmore.  R., Vol. I, at 227 (Plea Agreement, filed Mar. 30, 2021).  But various sections throughout the document repeated that it was a Rule 11(c)(1)(C) plea agreement.  In both the plea agreement and in the petition to enter a guilty plea, Ms. Woodmore acknowledged that the charge to which she was pleading guilty carried a statutory mandatory minimum sentence of ten years (120 months).

The district court held a change of plea hearing on March 30, 2021.  During the hearing, the court conducted a colloquy with Ms. Woodmore, in which she affirmed under oath that she had discussed the charges against her with her attorney, Mr. McGuire, and that she was satisfied with his counsel and representation.  She also stated that she had read and discussed the plea agreement with Mr. McGuire, that she understood the sentencing recommendation range of 151 to 188 months contained within the agreement, and that she understood that she faced a mandatory minimum of at least ten years.  Finally, she confirmed that she was pleading guilty of

her own free will and was willingly waiving her right to challenge or appeal her conviction or sentence. The district court found that her waiver was "freely, voluntarily and knowingly made." *Id.*, Vol. IV, at 23 (Tr. Plea Hr'g, Mar. 30, 2021). Notably, the district court also explained to Ms. Woodmore that, despite her waiver, she would retain her "right to appeal based upon a claim of ineffective assistance of counsel." *Id.* at 18.

The district court then asked Ms. Woodmore to describe "in [her] own words what [she] did that ma[de] [her] guilty" of the charged offense. *Id.* at 25. Ms. Woodmore attempted to read the factual basis for her guilty plea, but had difficulty doing so. Mr. McGuire intervened in the recitation and guided her through much of the statement, reading aloud each word for Ms. Woodmore to then repeat to the district court. After Ms. Woodmore finished her statement, Mr. McGuire informed the district court that he believed his client to have a "fourth[-]grade" literacy level despite having graduated from high school. *Id.* at 28.

The district court inquired further—going through the factual basis line-by-line to ensure that Ms. Woodmore understood the conduct to which she had just admitted. Once it was satisfied that Ms. Woodmore did indeed admit the conduct underlying the charge against her, the district court asked her if she waived her rights and was pleading guilty "voluntarily and completely of [her] own free will." *Id.* at 31. After Ms. Woodmore confirmed her understanding of the agreement, the district court accepted her guilty plea and found that it was "knowing and voluntary." *Id.* at 31–32.

4

Before Ms. Woodmore's sentencing hearing, the Probation Office for the Eastern District of Oklahoma ("Probation") drafted a presentence investigation report ("PSR") and filed it on October 20, 2021. Probation calculated that Ms. Woodmore's base offense level under the Guidelines was thirty-four. It then added two adjustments that effectively canceled each other out: a three-level enhancement pursuant to U.S.S.G. § 3B1.1(b) because it determined that Ms. Woodmore was a manager or supervisor in the offense conduct, and a three-level reduction pursuant to U.S.S.G. §§ 3E1.1(a) and (b) because Ms. Woodmore accepted responsibility. Applying the total offense level of thirty-four to a criminal history category of I, Probation determined that Ms. Woodmore's advisory sentencing range was 151 to 188 months—the same range agreed to by the parties.

**2**

A few weeks later, on November 2, 2021, Ms. Woodmore filed a pro se motion to dismiss Mr. McGuire as her counsel. She wrote:

> I would like to file a motion to dismiss my attorney Michael McGuire from representing me. He has led me to believe I was pleaing [*sic*] guilty to a charge that was a 5 year maximum sentence. He has never warned me of any enhancements I could be facing. He refused to leave me a copy of my PSR due to me having a co-defendant at the same facility as me. I asked him to make objections as [*sic*] some things when he came to see me on 10/22/21 and told him we only had 14 days to do so. He said he would come back to see me on 10/25/21 or later on that week and that there [*sic*] no deadline for objection. He has not been back to see me as [*sic*] today 10/29/21. I have been mislead [*sic*] by him in many ways and I feel like I was tricked into a plea deal and did not fully understand. I am requesting a new attorney for those reasons. Thank you.

R., Vol. III, at 36 (Mot. to Dismiss Couns., filed Nov. 2, 2021).

5

Mr. McGuire filed an ex parte response to rebut Ms. Woodmore's claims. He outlined his work on her case, cataloguing his communications and meetings with Ms. Woodmore throughout his representation. Of note, he asserted that he wrote multiple legal memoranda for Ms. Woodmore in which he explained the charges facing her; the different elements of the sentencing process, particularly the relevant enhancements under the Guidelines; and the ten-year mandatory minimum sentence she faced if she pleaded guilty to Count One of the indictment.[1] Mr. McGuire denied Ms. Woodmore's claim that he informed her that she was pleading guilty to a charge with a five-year maximum sentence and wrote that Ms. Woodmore's assertions regarding his guidance were "deliberate lie[s]," *id.*, Vol. II, at 12, meant to "obstruct and delay th[e] case procedurally," *id.* at 5.

The district court held an ex parte sealed hearing on Ms. Woodmore's motion. There, it gave Ms. Woodmore an opportunity to elaborate on her motion. She repeated that, when she was considering whether to plead guilty or proceed to trial, Mr. McGuire informed her that the government's plea offer carried a likely maximum sentence of five years. At this point, the district court discussed each of the relevant clauses in the plea agreement that Ms. Woodmore had initialed upon its execution, including the express indication that the charge to which she was pleading guilty

---

[1] Mr. McGuire did not attach any of these legal memoranda to his response, nor were they entered into the record at the ex parte hearing (discussed *infra*). Instead, he offered that "[t]hese legal memos are available for the Court to review if requested." R., Vol. II, at 8 (Ex Parte Resp. to Mot. to Dismiss Def. Couns., filed Nov. 23, 2021). The district court did not make such a request. As such, they are not included in the record before us.

carried a mandatory minimum of ten years' imprisonment and that her agreed-upon sentencing range was 151 to 188 months.  The district court also asked Ms. Woodmore if she recalled stating at the change of plea hearing that she understood the terms of the plea agreement.  She confirmed that she did, and that she recalled affirming at the change of plea hearing that she understood the sentencing range detailed in the agreement.

After walking Ms. Woodmore through the terms of the plea agreement and her affirmations at the change of plea hearing, the district court turned to Mr. McGuire. The court characterized Mr. McGuire's written response to Ms. Woodmore's motion as "very informative" and gave him an opportunity to elaborate further if he desired. R., Vol. V, at 12–14 (Tr. Ex Parte Hr'g, Dec. 16, 2021).  After Mr. McGuire reiterated his belief that he had properly counseled Ms. Woodmore, the district court asked him "[i]s there anything that you said or did in connection with your communication with Ms. Woodmore that could have ever possibly led her to conclude that she was pleading guilty to a charge that had a five-year maximum sentence?" *Id.* at 14.  Mr. McGuire responded, "[n]o, sir, absolutely nothing." *Id.* He also asserted that he had no reason to end his representation of Ms. Woodmore and that he did not believe his continued representation of her created a conflict of interest.

The district court concluded that there was no basis to dismiss Mr. McGuire from Ms. Woodmore's case, as it maintained the "firm belief" that Mr. McGuire had represented Ms. Woodmore "quite well" by engaging in "substantial

communications" with her and keeping her "informed" of the developments in her case. *Id.* at 17. The district court then added:

> Ms. Woodmore, I find your statement in your motion to be unbelievable and . . . not credible. And not only do I believe that your lawyer explained the facts and circumstances of the case, including the minimum—or the sentence to you, I know that he did . . . And there was nothing missed in this case in terms of advising Ms. Woodmore of her rights . . . And so there's no question in my mind that Ms. Woodmore understood her rights, waived her rights, and that they were knowing, intelligent, and voluntary waivers of her rights . . . [W]hat I see . . . happening here is for whatever reason, Ms. Woodmore has had a change of her mind. . . . [B]ut . . . she was advised completely. . . . So I don't think that your statement in your motion was credible. I don't think that there's any basis for me to dismiss Mr. McGuire from this case.

*Id.* at 17–19.

### 3

With Mr. McGuire still as her defense counsel, Ms. Woodmore filed her sentencing memorandum on March 15, 2022, objecting to the enhancement applied by Probation in its calculation of her sentencing range in the PSR. The district court held the sentencing hearing on May 12, 2022, where it denied Ms. Woodmore's objections and sentenced her to 151 months' imprisonment—the low end of the range provided in the plea agreement.

### 4

The district court entered final judgment on May 13, 2022. Ms. Woodmore, through her counsel, filed a notice of appeal on May 26. In the notice of appeal, Mr. McGuire wrote:

> Defendant, Amber Nicole Woodmore, has insisted her counsel of record, Michael G. McGuire, file this Notice of Intent to Appeal her sentence received in this case. . . . Additional background

8

> information is also provided in this Notice because Defendant Amber Woodmore has previously agreed to the waiver of her right to file an appeal of her sentence and conviction . . . .  Under the rules of our federal courts, I believe I must file this Notice of Appeal requested by the defendant notwithstanding the Waivers previously filed into the record.

*Id.*, Vol. I, at 269, 271 (Notice of Appeal, filed May 26, 2022).

On December 20, 2022, the government moved to dismiss Ms. Woodmore's appeal by seeking to enforce the appellate waiver contained in her plea agreement. Ms. Woodmore filed a response to the motion on February 2, 2023.  On February 28, 2023, a panel of this Court denied the government's motion without prejudice to the government raising the issue again in its merits brief.

## II

We review de novo whether a defendant's waiver of her appellate rights is enforceable.  *See United States v. Ibarra-Coronel*, 517 F.3d 1218, 1221 (10th Cir. 2008).  We consider: "(1) whether the . . . appeal falls within the scope of the waiver . . . , (2) whether the defendant knowingly and voluntarily waived [her] appellate rights, and (3) whether enforcing the waiver would result in a miscarriage of justice."  *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).  The defendant bears the burden of establishing that these factors are satisfied.  *See id.* at 1329.

As for the second prong, "we especially look to two factors.  First, we examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily. . . .  Second, we look for an adequate Federal

9

Rule of Criminal Procedure 11 colloquy. . . ." *Id.* (citation omitted). "[E]ither the express language of the plea agreement, if sufficiently clear, detailed, and comprehensive, or the probing inquiry of a proper Rule 11 colloquy could be enough to conclude the waiver was knowing and voluntary. But the synergistic effect of both will often be conclusive." *United States v. Tanner*, 721 F.3d 1231, 1234 (10th Cir. 2013).

We must also "consider the knowing and voluntary nature of the entirety of the plea agreement to satisfy this inquiry." *United States v. Rollings*, 751 F.3d 1183, 1189 (10th Cir. 2014). "In other words, if the defendant did not voluntarily enter into the agreement, the appellate waiver subsumed in the agreement also cannot stand." *Id.* Assessing the knowing and voluntary nature of the plea agreement itself requires that we "ascertain at a minimum whether the defendant had notice of the nature of the charges against him and the possible penalties the charges carry." *Id.* at 1190.

As for the third prong, "[e]nforcement of an appellate waiver results in a miscarriage of justice only if (1) 'the district court relied on an impermissible factor such as race,' (2) counsel provided ineffective assistance in connection with the negotiation of the waiver, (3) 'the sentence exceeds the statutory maximum,' or (4) the waiver itself is otherwise unlawful." *United States v. Leyva-Matos*, 618 F.3d 1213, 1217 (10th Cir. 2010) (quoting *Hahn*, 359 F.3d at 1327).

### III

Ms. Woodmore focuses her argument on the second *Hahn* prong and contends that the appellate waiver in her plea agreement is not enforceable because she did not

10

plead guilty knowingly and voluntarily.  According to Ms. Woodmore, because her plea was not made knowingly and voluntarily, her appellate waiver is unenforceable—meaning that she can pursue this appeal even though it falls within the scope of the waiver.  In response, the government maintains that her guilty plea was indeed knowing and voluntary and therefore again urges us to enforce her appellate waiver and dismiss her appeal.

After careful consideration, we reject Ms. Woodmore's argument.  We conclude that she knowingly and voluntarily pleaded guilty.  Accordingly, we enforce the appellate waiver contained in her plea agreement and dismiss this appeal.

**A**

The parties disagree as to what standard of review we should apply here.  The government urges us to apply plain error because "[Ms.] Woodmore . . . has not appealed from the denial of her motion to dismiss counsel" nor "move[d] below to withdraw her guilty plea on the basis it was not knowing and voluntary."  Aplee.'s Resp. Br. at 10.  Therefore, it argues, since "[she] did not raise any challenge below to the validity of her plea, she must meet the plain-error standard."  *Id.*

Ms. Woodmore, on the other hand, urges us to review her challenge de novo because "[t]he knowing and voluntary nature surrounding [Ms. Woodmore's] plea was considered by the district court in its ruling on her Motion to Dismiss Counsel." Aplt.'s Opening Br. at 25.  She argues that, as such, "the district court was 'adequately alerted to the issue' . . . and 'even responded to the issue'" even though Mr. McGuire did not object when she entered the plea agreement, and she did not file

a motion to withdraw her guilty plea.  *Id.* at 26 (quoting *United States v. Garcia*, 936 F.3d 1128, 1132 (10th Cir. 2019)).

We need not resolve this question, however, because Ms. Woodmore's arguments fail under either standard.  Therefore, we assume without deciding that de novo review—the standard most favorable to Ms. Woodmore—is appropriate here and proceed to the merits.

**B**

**1**

We have no need to assess the merits of the first *Hahn* factor: whether Ms. Woodmore's direct appeal falls within the scope of the appellate waiver contained in her plea agreement.  *See* 359 F.3d at 1325.  That is because Ms. Woodmore concedes the point.  *See* Aplt.'s Reply Br. at 6.

**2**

As to the second *Hahn* prong—a center of Ms. Woodmore's attention— Ms. Woodmore presents three reasons why she did not knowingly and voluntarily enter her guilty plea: (1) "both the written plea agreement and the court's colloquy [we]re devoid of any explanation that [she] was entering a 'binding-plea' under Rule 11(c)(1)(C)"; (2) Ms. Woodmore's limited literacy and comprehension at the plea colloquy prevented her from "truly under[standing]" the impact of her plea agreement and appellate waiver, which the district court did not effectively ameliorate; and (3) the district court materially misadvised her regarding the effect of the appellate waiver when it stated that she retained the right to argue on appeal that

12

she received ineffective assistance of counsel.  Aplt.'s Opening Br. at 29–30.  She contends that the three alleged errors made by the district court collectively prevented her from knowingly and voluntarily pleading guilty.  Essentially, Ms. Woodmore claims that "the district court failed to ensure that [she] knew and understood the direct consequences of her guilty plea," so it erred in accepting her plea.  *Id.* at 31.

**a**

Because "the synergistic effect" of the "express language of the plea agreement" and the "probing inquiry of a proper Rule 11 colloquy" are generally determinative as to whether a plea was entered knowingly and voluntarily, *Tanner*, 721 F.3d at 1234, we first examine the language of Ms. Woodmore's plea agreement and the depth of her plea colloquy.  Taking them together and in totality, they demonstrate Ms. Woodmore's plea and appellate waiver to have been knowingly and voluntarily made.

Ms. Woodmore "concedes that the text of the written plea agreement 'waive[d] the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a)' and 'reserve[d] [only] the right to appeal from a sentence which exceeds the statutory maximum.'"  Aplt.'s Reply Br. at 2 (quoting R., Vol. I, at 220–21).  In the plea agreement, she affirmed that she "fully underst[ood]" these terms of the agreement and "voluntarily agree[d] to it without reservation."  R., Vol. I, at 227.  We do not require anything more when determining that the language of

13

the plea agreement is "sufficiently clear, detailed, and comprehensive." *Tanner*, 721 F.3d at 1234.

The Rule 11 colloquy confirms our conclusion, as the district court more than satisfied its obligations under the rule. Rule 11 requires the court to "address the defendant personally in open court" "[b]efore the court accepts a plea of guilty." FED. R. CRIM. P. 11(b)(1). As part of this colloquy, the court must "inform the defendant of, and determine that the defendant understands" fifteen different factors, including "the nature of each charge to which the defendant is pleading," "any mandatory minimum penalty," and "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." FED. R. CRIM. P. 11(b)(1). The court must also "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)," and "determine that there is a factual basis for the plea." FED. R. CRIM. P. 11(b)(2)–(3).

Here, the district court satisfied these requirements. It expressly confirmed with Ms. Woodmore that she "underst[ood] the terms of the plea agreement," R., Vol. IV, at 11; that she "underst[ood] the sentencing recommendation contained" in the agreement, *id.*; that she "underst[ood]" that she faced a statutory minimum sentence of ten years, *id.* at 13; that, "by entering into [the] plea agreement[,] . . . [she] waive[d] . . . certain rights to appeal or challenge all or part of the sentence"— specifically her "right to challenge or appeal the conviction and sentence, including . . . the length of any prison term or term of supervised release, and the

14

right to seek any modification of [her] sentence," *id.* at 18; and that she made those waivers and pleaded guilty "voluntarily and completely of [her] own free will," *id.* at 31. It also heard and accepted representations from both the government and Ms. Woodmore that there was a factual basis for the plea. That is sufficient to demonstrate the propriety of a Rule 11 colloquy. *See Tanner*, 721 F.3d at 1234–35.

Therefore, we observe that "the language of the plea agreement states that [Ms. Woodmore] entered the agreement knowingly and voluntarily" and that there was "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325. As such, "[h]ere, the plea agreement and . . . Rule 11 colloquy, taken together, demonstrate [Ms. Woodmore's] waiver to have been knowingly and voluntarily made." *Tanner*, 721 F.3d at 1234.

**b**

Ms. Woodmore's specific arguments do not alter this conclusion. First, she was adequately advised as to the consequences of a Rule 11(c)(1)(C) plea. She maintains that "both the written plea agreement and the court's colloquy [were] devoid of any explanation that [she] was entering a 'binding-plea' under Rule 11(C)(1)(c)." Aplt.'s Opening Br. at 29. According to Ms. Woodmore, a number of factors "combined to both confuse and misinform [her]" about the consequences of her guilty plea—notably, both the district court and the text of the plea agreement "affirmative[ly] misadvise[d]" her that the 151-to-188-month range "was only a 'sentencing recommendation.'" *Id.* at 29–30. Therefore, Ms. Woodmore reasons that

15

she did not "accurate[ly] understand[] . . . the length of the federal sentence she was agreeing to," so her guilty plea "cannot be found knowing and voluntary." *Id.* at 30.

This position is meritless. To start, the district court did not mislead Ms. Woodmore by referring to the sentencing range as a "recommendation." In fact, the text of Rule 11(c)(1)(C) itself refers to the stipulated sentencing range as a "recommendation." FED. R. CRIM. P. 11(c)(1)(C).[2] The rule also indicates that, until accepted by the court, any sentencing recommendation is not binding. *See id.* ("[S]uch a recommendation or request binds the court *once the court accepts the plea agreement*." (emphasis added)). Therefore, it was not a mischaracterization—much less an "affirmative misadvisement[]"—for the court to speak of the stipulated sentencing range as a "recommendation." Aplt.'s Opening Br. at 29.

Moreover, Ms. Woodmore's plea agreement and colloquy contained multiple indications that Ms. Woodmore was entering a Rule 11(c)(1)(C) plea, several of which articulated the consequences of such a decision. On its very first page, the plea agreement stated in bold lettering that Ms. Woodmore was entering her plea

---

[2] The full text of the rule provides:

> If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will: agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a *recommendation or request* binds the court once the court accepts the plea agreement).

FED. R. CRIM. P. 11(c)(1)(C) (emphasis added).

agreement pursuant to "Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure." R., Vol. I, at 217. In a different section, it affirmed that Ms. Woodmore waived her rights to request a departure or variance, ensuring that 151 to 188 months remained the recommended range. Finally, under the header "Sentencing Recommendation(s)," the agreement provided that "[p]ursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the defendant and the United States agree that a sentencing range of 151 to 188 months is an *appropriate disposition of this case*." *Id.* at 224 (emphasis added).

During the plea colloquy itself, the government opened by stating, "the plea agreement does contain a sentencing recommendation pursuant to Rule 11(c)(1)(C) of 151 to 188 months, which is the government's calculation of the sentencing guidelines." R., Vol. IV, at 6. The district court confirmed with Mr. McGuire that the government accurately and adequately described the terms of the plea agreement. A few minutes later, the district court asked Ms. Woodmore: "Specifically do you understand that [the plea agreement] states that you and the government are agreeing that a sentencing range between 151 and 188 months is an appropriate sentence in this case?" *Id.* at 11. She responded in the affirmative. Therefore, it cannot be said that Ms. Woodmore did not understand that she was entering a Rule 11(c)(1)(C) plea and the consequences of that plea—let alone that she did not "h[ave] notice of the nature of the charges against h[er] and the possible penalties the charges carr[ied]." *Rollings*, 751 F.3d at 1190. She was indeed repeatedly advised "of the length of the federal sentence [to which] she was agreeing." Aplt.'s Opening Br. at 30.

17

## c

Ms. Woodmore next argues that her appellate waiver was not knowing and voluntary because the district court failed to restart the plea colloquy to account for her literacy difficulties once they became apparent. This argument also fails, as the district court more than sufficiently confirmed with Ms. Woodmore that she understood the terms of her plea agreement.

The record indicates that Ms. Woodmore had difficulty reading her statement of the factual basis for her plea at her colloquy, and that Mr. McGuire guided her through the recitation of her statement. But, in response, the district court then broke down Ms. Woodmore's factual basis line-by-line to ensure that she agreed with the facts. The district court also revisited the knowing and voluntary nature of Ms. Woodmore's plea right after that when it asked whether Ms. Woodmore was waiving her rights and pleading guilty "voluntarily and completely of [her] own free will." R., Vol. IV, at 30. Then, it offered to rephrase the question another way, and asked, "[a]re the waivers of your rights and your plea of guilty here today made voluntarily and completely of your own free will?" *Id.* at 31. Ms. Woodmore responded in the affirmative. As such, contrary to Ms. Woodmore's position, the court *did* revisit the knowing and voluntary nature of her guilty plea after it was alerted to her literacy level, and it took pains to confirm that she understood the terms of the agreement.

Ms. Woodmore cites no caselaw to support her position, and in fact, a panel of this Court has rejected a similar argument. In *United States v. Martinez*, No. 22-

18

2080, 2023 WL 1978842 (10th Cir. Feb. 14, 2023) (unpublished),[3] the panel rejected the defendant's argument that the magistrate judge erred in not conducting a more specific inquiry after learning that he was illiterate, and held that "there is no reason to assume an uneducated or even an illiterate defendant is unable to knowingly and voluntarily decide whether or not to plead guilty." *Id.* at *3.  In so holding, the panel noted that the magistrate judge confirmed that the defendant's attorney had explained the proceedings and the options available to the defendant, the magistrate judge confirmed that the defendant understood his rights, and the defendant's "answers to the magistrate judge's questions at the hearing were coherent and responsive; nothing about them indicated any lack of understanding on his part." *Id.*

The same is true of the district court's interaction with Ms. Woodmore. Therefore, the district court's response to her literacy difficulties did not affect the knowing and voluntary nature of her appellate waiver.

**d**

Ms. Woodmore's third and final argument fares no better.  She asserts that, "specific to the appellate waiver, the court's advisement was contrary to the written plea agreement when the court told [her] that she did retain the 'right to appeal based upon a claim of ineffective assistance of counsel.'"  Aplt.'s Opening Br. at 30 (quoting R., Vol. IV, at 18).

---

[3]    We rely on this non-precedential decision only for its persuasive value. *See United States v. Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015).

Ms. Woodmore does not elaborate on this point, nor does she cite any authority compelling reversal.  Indeed, she cannot.  We have repeatedly held that a district court's minor misstatement regarding the scope of a defendant's appellate waiver—particularly when the misstatement occurs *after* the execution of the plea agreement—does not negate the knowing and voluntary nature of a defendant's guilty plea.  In *United States v. Smith*, 500 F.3d 1206 (10th Cir. 2007), we enforced the defendant's appellate waiver notwithstanding the district court's misstatement at the sentencing hearing that she retained her appellate rights when, in fact, she had waived those rights.  *See id.* at 1211.  We held that "a district court's statement that a defendant has the right to appeal does not necessarily negate a waiver-of-appeal provision contained in a plea agreement when the defendant enters into that agreement prior to the court's statement."  *Id.*; *see also Ibarra-Coronel*, 517 F.3d at 1222–23 (rejecting the defendant's argument that the magistrate judge's misstatement regarding the applicable statutory maximum sentence negated the knowing and voluntary nature of her guilty plea because the text of the plea agreement and the Rule 11 colloquy were otherwise adequate and the defendant signed the agreement before hearing the magistrate judge's misstatement).[4]

---

[4]    In *Smith*, we noted that we are "especially" unlikely to void an appellate waiver if "after informing the defendant that he has appellate rights, the court does not ask [the] defendant whether he understands the description of those rights."  500 F.3d at 1211.  That is not the case here; after misstating that Ms. Woodmore retained "a right to appeal based upon a claim of ineffective assistance of counsel," the district court asked Ms. Woodmore to confirm that she understood, which she did.  R., Vol. IV, at 18.  But whether the defendant acknowledged the district court's misstatement is not dispositive, and we do not always consider it when analyzing

Thus, Ms. Woodmore has not shown that the district court's minor misstatement[5] regarding the scope of her appellate waiver during the plea colloquy created a material ambiguity as to the otherwise unambiguous written waiver. *See Ibarra-Coronel*, 517 F.3d at 1223.

\* \* \*

In sum, the record shows that Ms. Woodmore made her appellate waiver knowingly and voluntarily. *See Rollings*, 751 F.3d at 1194.

**3**

We next determine that enforcing Ms. Woodmore's appellate waiver would not result in a miscarriage of justice. *See Hahn*, 359 F.3d at 1325. Enforcement of an appellate waiver results in a miscarriage of justice if (1) the district court relied on an impermissible factor such as race, (2) counsel provided ineffective assistance in connection with the negotiation of the waiver, (3) the sentence exceeds the statutory maximum, or (4) the waiver itself is otherwise unlawful. *See id.* at 1327.

---

whether a misstatement negates the knowing and voluntary nature of an appellate waiver. *See Ibarra-Coronel*, 517 F.3d at 1223. Therefore, the fact that the district court asked Ms. Woodmore to confirm her understanding of its misstatement does not counteract the other factors here that demonstrate that her waiver was knowing and voluntary.

[5] The government maintains that the district court was actually referring "to the provision of the appellate waiver under which [Ms.] Woodmore retained the right to collaterally attack her sentence and conviction based on a claim of ineffective assistance of counsel." Aplee.'s Resp. Br. at 21. However, even assuming (as we do) that the statement was inaccurate, as Ms. Woodmore claims, we still conclude that the district court did not introduce ambiguity into the clear appellate waiver provision written into the plea agreement.

21

Ms. Woodmore contends that "[r]easons (2) and (4) are applicable here"—i.e., that Mr. McGuire did not effectively assist her in negotiating the waiver and that the waiver itself is otherwise unlawful. Aplt.'s Reply Br. at 14. Specifically, she maintains that enforcing the appellate waiver would create a miscarriage of justice because Mr. McGuire's ineffective assistance invalidated her guilty plea and her waiver is otherwise unlawful because she did not understand its terms and her sentence is notably longer than sentences of her co-conspirators. This argument is unavailing because ineffective assistance of counsel claims are not reviewable on direct appeal where—as here—the claim is not fully developed in the record, and because Ms. Woodmore's appellate waiver was not otherwise unlawful.

**a**

"[A] defendant must generally raise claims of ineffective assistance of counsel in a collateral proceeding, not on direct review." *United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005). "This rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel." *Id.* However, "'[w]e recognize a narrow exception for the "rare claims which are fully developed in the record and allow such claims to be brought either on direct appeal or in collateral proceedings."'" *United States v. Reed*, 39 F.4th 1285, 1292 (10th Cir. 2022) (quoting *United v. Trestyn*, 646 F.3d 732, 741 (10th Cir. 2011)).

Ms. Woodmore contends that her ineffective assistance claim—as a component of her challenge to the enforceability of her appellate waiver—merits review on direct appeal because "the factual record is sufficiently developed" here.

22

Aplt.'s Reply Br. at 15. According to her, that is so because Mr. McGuire "made a record of his own actions and his reasons therefor through his detailed memorandum, arguments, and statements to the court." *Id.* This position fails in the face of our precedent.

A survey of our caselaw reveals that, when we consider a claim of ineffective of counsel on direct review in the context of a defendant's challenge to his or her appellate waiver, the district court has already conducted an evidentiary hearing on that claim. *See, e.g.*, *Reed*, 39 F.4th at 1292–93 (finding that the record was sufficiently developed for review on direct appeal after the district court held an evidentiary hearing on the defendant's motion to withdraw his guilty plea); *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1215–16 (10th Cir. 2008) (same). Here, Ms. Woodmore concedes that the district court did not hold a "full blown evidentiary hearing." Aplt.'s Reply Br. at 15.

As the government notes, Ms. Woodmore also "did not move to withdraw her guilty plea or allege constitutionally ineffective assistance of counsel in the district court" and the hearing that the court held on her motion to dismiss counsel was ex parte. Aplee.'s Resp. Br. at 27. Moreover, during that hearing, Mr. McGuire did not provide sworn testimony, nor did any party or the district court address his constitutional effectiveness under *Strickland v. Washington*, 466 U.S. 668 (1984). In short, the record before us is not sufficiently developed to review Ms. Woodmore's ineffective assistance of counsel claim on direct review. It follows, then, that her

claims of ineffective assistance of counsel cannot provide a basis for concluding that it would be a miscarriage of justice to enforce her appeal waiver.[6]

**b**

Ms. Woodmore fares no better in contending that her appellate waiver was otherwise unlawful.  In essence, she maintains that this case meets that legal threshold because her sentence is too high given that she pleaded guilty to performing only one overt act, did not understand the binding nature of her guilty plea, and received a higher sentence than her co-defendants.

None of these arguments are persuasive, and we can dispose of them quickly. First, contrary to Ms. Woodmore's suggestion, the charge to which she pleaded guilty involved a drug trafficking conspiracy in which the overt act expressly associated with her in the indictment—i.e., the transmission of $800—did not define as a matter

---

[6]    Notwithstanding that the miscarriage of justice exception creates only a limited exemption from the waiver of appellate review, Ms. Woodmore brings two additional ineffective assistance claims that do not relate to the negotiation of her plea agreement or appellate waiver.  She contends that Mr. McGuire was constitutionally ineffective because (1) he "ceased to be an advocate for his client" after she filed her motion to dismiss counsel, creating a conflict of interest; and (2) the subsequent tension between them caused a "[c]omplete [b]reakdown in [c]ommunication" that severed their working relationship.  Aplt.'s Opening Br. at 44–45.

These claims are not connected to the negotiation of Ms. Woodmore's guilty plea or appellate waiver because they allegedly occurred in November 2021—after the execution of her plea agreement.  Moreover, pursuant to Ms. Woodmore's plea agreement, such ineffective assistance of counsel claims may be brought only on collateral attack.  Therefore, because Ms. Woodmore's appellate waiver is enforceable for the reasons discussed herein, Ms. Woodmore has waived her right to bring such claims on direct appeal.

of law the outer limits of her criminal conduct. Indeed, the government is not required to plead or prove *any* overt acts in establishing conspirators' guilt in a narcotics conspiracy like the one here. *See, e.g.*, *United States v. Mier-Garces*, 967 F.3d 1003, 1014 (10th Cir. 2020). Therefore, it hardly seems significant to the question of Ms. Woodmore's culpability that she was only expressly mentioned in one overt act. Moreover, as a factual matter, Ms. Woodmore did not object to any of the facts as presented in her plea agreement, at her plea colloquy, in her PSR, or at sentencing. And the factual record reveals conduct far more extensive than one transfer of $800. For example, according to the PSR, Ms. Woodmore assumed control of the trafficking organization after the ringleader—who was her brother—was incarcerated.

Second, Ms. Woodmore cites no authority showing that an appellate waiver is otherwise unlawful when co-defendants receive lower sentences. As she herself concedes, there are many reasons that could have lowered her co-defendants' sentences.

Third, even taken at face value, Ms. Woodmore's claim that the district court improperly explained the binding nature of her guilty plea does not render her appellate waiver otherwise unlawful. The otherwise unlawful exception applies only when the waiver fell outside the boundaries of the law in some way, not when "another aspect of the proceeding may have involved legal error." *Leyva-Matos*, 618 F.3d at 1217 (quoting *Smith*, 500 F.3d at 1213). As such, "[a]n appeal waiver is not 'unlawful' merely because the claimed error would, in the absence of waiver, be

25

appealable." *Id.* (quoting *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007)). The absence of any supporting authority is fatal to Ms. Woodmore's argument on this point. Her appellate waiver was not otherwise unlawful.

\* \* \*

As such, we hold that the waiver of appellate rights contained in Ms. Woodmore's plea agreement is enforceable because she has not met her burden of demonstrating that the three elements of the *Hahn* test are satisfied. *See* 359 F.3d at 1329. Ms. Woodmore's appeal falls within the scope of her appellate waiver; she knowingly and voluntarily waived her appellate rights; and the waiver's enforcement would not result in a miscarriage of justice. *See id.* at 1325.

**IV**

For the foregoing reasons, we enforce Ms. Woodmore's appellate waiver and **DISMISS** her appeal.

Entered for the Court

Jerome A. Holmes
Chief Judge